**No. 25-\_\_\_\_**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

**IN RE SANDISK TECHNOLOGIES, INC. and WESTERN DIGITAL TECHNOLOGIES, INC.,**

*Petitioners.*

---

## PETITION FOR A WRIT OF MANDAMUS

---

**On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2025-00515, IPR2025-00516, IPR2025-00517**

---

### HAYNES AND BOONE, LLP

Debra J. McComas
Daniel L. Geyser
Michael Qian
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Phone: (214) 651-5375

Angela M. Oliver
888 16th Street NW, Suite 300
Washington, DC 20006
Phone: (202) 654-4552

September 17, 2025

*Counsel for Petitioners Sandisk Technologies, Inc. and Western Digital Technologies, Inc.*

# CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | TBD |
| **Short Case Caption** | In re Sandisk Technologies, Inc. and Western Digital Technologies, Inc. |
| **Filing Party/Entity** | Sandisk Technologies, Inc.; Western Digital Technologies, Inc. |

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: September 17, 2025          Signature:    */s/ Debra J. McComas*

Name:        Debra J. McComas

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ___ None/Not Applicable | X None/Not Applicable | _ None/Not Applicable |
| Sandisk Technologies, Inc. | | Sandisk Corporation |
| Western Digital Technologies, Inc. | | Western Digital Corporation |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

___ None/Not Applicable                    ___ Additional pages attached

| | | |
|---|---|---|
| David M. O'Dell (Haynes and Boone, LLP) | Hong Shi (Haynes and Boone, LLP) | Calmann J. Clements (Haynes Boone, LLP) |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)? X Yes (file separate notice; see below) _ No _ N/A (amicus/movant) If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

X None/Not Applicable                    ___ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ............................................................. i

TABLE OF CONTENTS ................................................................... iii

TABLE OF AUTHORITIES ................................................................ v

STATEMENT OF RELATED CASES ........................................................ 1

RELIEF SOUGHT ....................................................................... 2

INTRODUCTION ........................................................................ 3

ISSUES PRESENTED .................................................................... 5

BACKGROUND .......................................................................... 6

    I.    Congress established IPR, and the USPTO created its own IPR
institution criteria without notice and comment. .............................. 6

    II.   Petitioners filed IPR petitions. ......................................... 8

    III.  After the IPR petitions were filed, and without notice and
comment, the USPTO invented a new, evolving "settled
expectations" rule. ........................................................... 9

    IV.  The USPTO denied institution here based solely on "settled
expectations." ................................................................11

STANDARD OF REVIEW ................................................................ 12

REASONS WHY THE WRIT SHOULD ISSUE ................................................ 12

    I.    The USPTO's errors are clear and indisputable. ........................... 12

          A.    The USPTO violated due process by retroactively
applying a new bar to these IPR petitions. ...................................13

          B.    The USPTO violated the APA by retroactively applying
the "settled expectations" rule without authority or
reasoned decisionmaking. ..................................................... 18

C.     The USPTO violated the APA and AIA by imposing a limitation on institution without notice-and-comment rulemaking. ............................................................................ 21

D.     The USPTO exceeded its authority—in violation of the APA and the Constitution—by inventing an IPR institution criterion untethered to the AIA. ............................ 25

     1.     Congress did not empower the Director to create extra-statutory institution criteria. ................................................. 25

     2.     Congress did not authorize the Director to deny institution because a patent is "old." ................................................... 30

II.     The remaining mandamus criteria are satisfied. ................................ 32

A.     The USPTO's errors are reviewable in mandamus. ................ 32

B.     Petitioners have no other adequate means of relief. ................. 36

C.     Mandamus is appropriate under the circumstances. .............. 37

CONCLUSION ................................................................................ 38

CERTIFICATE OF COMPLIANCE ................................................ 40

PROOF OF SERVICE ..................................................................... 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AFL-CIO v. NLRB*,
   57 F.4th 1023 (D.C. Cir. 2023) ........................................ 23

*Am. Hosp. Ass'n v. Bowen*,
   834 F.2d 1037 (D.C. Cir. 1987) ....................................... 22

*Apple Inc. v. Fintiv, Inc.*,
   IPR2020-00019, 2020 WL 2126495 (PTAB Mar. 20, 2020) ................. 7, 16, 28

*Apple Inc. v. Vidal*,
   63 F.4th 1 (Fed. Cir. 2023) ....................................... 32, 33, 35

*Aqua Prods., Inc. v. Matal*,
   872 F.3d 1290 (Fed. Cir. 2017) (en banc) ......................... 24

*Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*,
   72 F.4th 284 (D.C. Cir. 2023) .................................... 19

*In re BigCommerce, Inc.*,
   890 F.3d 978 (Fed. Cir. 2018) .................................... 37

*Bittner v. United States*,
   598 U.S. 85 (2023) ............................................... 30

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) .............................................. 19

*In re Brunetti*,
   —F.4th—, 2025 WL 2446503 (Fed. Cir. Aug. 26, 2025) ............. 19, 20

*Carnival Cruise Lines, Inc. v. United States*,
   404 F.3d 1312 (Fed. Cir. 2005) .................................. 15

*In re Chestek PLLC*,
   92 F.4th 1105 (Fed. Cir. 2024) .................................. 22

v

*Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*,
464 F.3d 1306 (Fed. Cir. 2006) .......................................................... 21

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017) ......................................................... 37

*Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*,
579 U.S. 261 (2016) .................................................................... *passim*

*Durr v. Nicholson*,
400 F.3d 1375 (Fed. Cir. 2005) ......................................................... 15

*ESIP Series 2, LLC v. Puzhen Life USA, LLC*,
958 F.3d 1378 (Fed. Cir. 2020) ......................................................... 34

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ......................................................... 24

*FDA v. Wages & White Lion Invs., L.L.C.*,
604 U.S. 542 (2025) ...................................................................... 20

*Fuentes v. Shevin*,
407 U.S. 67 (1972) ........................................................................ 18

*Gallo v. Dep't of Transp.*,
725 F.3d 1306 (Fed. Cir. 2013) ......................................................... 30

*Gen. Elec. Co. v. EPA*,
290 F.3d 377 (D.C. Cir. 2002) .......................................................... 23

*In re Google LLC, et al.*,
No. 25-144 (Fed. Cir., filed Aug. 18, 2025) ......................................... 4

*GPX Int'l Tire Corp. v. United States*,
780 F.3d 1136 (Fed. Cir. 2015) ......................................................... 17

*Gustafson v. Alloyd Co.*,
513 U.S. 561 (1995) ...................................................................... 28

*Hanauer v. Reich*,
82 F.3d 1304 (4th Cir. 1996) ........................................................... 34

vi

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ................................................................ 36

*Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*,
   467 U.S. 51 (1984) .................................................................13

*In re HighLevel, Inc.*,
   No. 25-148 (Fed. Cir., filed Aug. 29, 2025) ........................... 4

*IGT v. Zynga Inc.*,
   144 F.4th 1357 (Fed. Cir. 2025) .......................................... 35

*Lamoille Valley R.R. Co. v. I.C.C.*,
   711 F.2d 295 (D.C. Cir. 1983) .............................................. 23

*Landgraf v. USI Film Prods.*,
   511 U.S. 244, 270 (1994) ............................................... 14, 15

*Leedom v. Kyne*,
   358 U.S. 184 (1958) .............................................................. 34

*Logan v. Zimmerman Brush Co.*,
   455 U.S. 422 (1982) .............................................................. 18

*In re Motorola Solutions, Inc.*,
   No. 25-134 (Fed. Cir., filed June 23, 2025) ...................... 4, 26

*MST Exp. v. Dep't of Transp.*,
   108 F.3d 401 (D.C. Cir. 1997) .............................................. 24

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
   989 F.3d 1375 (Fed. Cir. 2021) ................................... *passim*

*Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*,
   595 U.S. 109 (2022) .............................................................. 27

*NLRB v. Wyman-Gordon Co.*,
   394 U.S. 759 (1969) .........................................................21, 25

*In re Palo Alto Networks, Inc.*,
   44 F.4th 1369 (Fed. Cir. 2022)............................................. 36

*Paralyzed Veterans of Am. v. West*,
   138 F.3d 1434 (Fed. Cir. 1998) .......................................................... 22

*PHH Corp. v. CFPB*,
   839 F.3d 1 (D.C. Cir. 2016) (Kavanaugh, J.), *order vacated* (Feb. 16,
   2017), *reinstated in relevant part*, 881 F.3d 75 (D.C. Cir. 2018)...........13

*Pickus v. U.S. Bd. of Parole*,
   507 F.2d 1107 (D.C. Cir. 1974) ......................................................... 23

*Princess Cruises, Inc. v. United States*,
   397 F.3d 1358 (Fed. Cir. 2005) ...................................................*passim*

*Reeder v. FCC*,
   865 F.2d 1298 (D.C. Cir. 1989) ......................................................... 23

*Rodriguez v. Peake*,
   511 F.3d 1147 (Fed. Cir. 2008) .................................................... 14, 17

*Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*,
   896 F.3d 1322 (Fed. Cir. 2018) ......................................................... 26

*SAP Am., Inc. v. Valtrus Innovs. Ltd.*,
   IPR2025-00414, 2025 WL 1909114 (AD July 10, 2025) .................... 10

*In re SAP America, Inc.*,
   No. 25-132 (Fed. Cir., filed June 16, 2025)................................... 4, 28

*SAS Inst., Inc. v. Iancu*,
   584 U.S. 357 (2018)............................................................. 32, 33, 34

*Taylor Energy Co. v. Dep't of the Interior*,
   990 F.3d 1303 (Fed. Cir. 2021) ......................................................... 35

*Thryv, Inc v. Click-To-Call Techs., LP*,
   590 U.S. 45 (2020) ............................................................................ 34

*U.S. Telecom Ass'n v. FCC*,
   400 F.3d 29 (D.C. Cir. 2005) ............................................................ 24

*Woodward v. DOJ*,
   598 F.3d 1311 (Fed. Cir. 2010) ..........................................................15

**Statutes**

5 U.S.C. §551 ............................................................................ 21

5 U.S.C. §553 ............................................................................ 21

5 U.S.C. §706 ...................................................................... *passim*

35 U.S.c. §135 ........................................................................... 29

35 U.S.C. §282 ...........................................................................31

35 U.S.C. §311 ....................................................................... 6, 29

35 U.S.C. §312 ..................................................................... 24, 34

35 U.S.C. §313 ........................................................................... 26

35 U.S.C. §314 ...............................................................5, 7, 26, 29

35 U.S.C. §315 ...............................................................26, 28, 29, 34

35 U.S.C. §316 ...................................................................... *passim*

35 U.S.C. §§321-329 ..................................................................... 6

35 U.S.C. §321 ....................................................................... 6, 31

35 U.S.C. §325 ...................................................................6, 26, 27

**Other Authorities**

88 Fed. Reg. 24,503 ................................................................. 7, 17

89 Fed. Reg. 28,693 .................................................................. 7, 17

AIA §3 ...................................................................................31

American Inventors Protection Act of 1999, Pub. L. No. 106–113,
    §4608, 113 Stat. 1501 ............................................................. 30

H.R. Rep. No. 112-98 (2011) ........................................................ 6

Interim Director Discretionary Process, USPTO.gov, *available at* https://www.uspto.gov/patents/ptab/interim-director-discretionary-process .......................................................................................... 11

Jonathan DeFosse et al., *Data Undermines USPTO's 'Settled Expectations' Doctrine* (Aug. 29, 2025), *available at* https://www.law360.com/articles/2381350 ....................................................... 3

Ryan Davis, *Stewart Says New Patent Policies Aim to Bring Stability* (Sept. 8, 2025), *available at* https://www.law360.com/articles/2364638/stewart-says-new-patent-policies-aim-to-bring-stability ................................................................ 10

Theresa Schliep, *Patent Office Plans Rulemaking For New PTAB Denial Process*, Law360, https://www.law360.com/articles/2324147 (Apr. 17, 2025).................................................................................................... 7

**STATEMENT OF RELATED CASES**

The three patents at issue in these *inter partes* review ("IPR") proceedings (U.S. Patent Nos. 9,183,085, 8,601,346, and 8,554,968) are being asserted in *Polaris PowerLED Technologies, LLC v. Western Digital Corp.*, No. 2:24-cv-02864 (C.D. Cal.) (filed Apr. 9, 2024). That case is currently stayed.

**RELIEF SOUGHT**

Sandisk Technologies, Inc. and Western Digital Technologies, Inc. ("Petitioners") respectfully request a writ vacating the non-institution decisions in IPR2025-00515, IPR2025-00516, and IPR2025-00517.[1] The Court should direct the USPTO to reconsider institution solely under the statutory criteria, not the agency's extra-statutory framework. At a minimum, the Court should direct the USPTO to reconsider institution without the USPTO's new "settled expectations" rule and solely under the guidance in place when the petitions were filed.

---

[1] Petitioners are challenging all three denials in a single mandamus petition because the USPTO issued a single decision for all three IPRs, the denials were substantively identical, and the relief requested here is the same.

## INTRODUCTION

Mandamus is available in extraordinary circumstances, and the USPTO's assertion of unbridled authority over IPR institution is extraordinary. Here, the USPTO denied institution based on a rule that "old" patents gain "settled expectations" that immunize them from IPR. That rule is lawless on every level. It is not found in any statute. It did not exist when Petitioners filed their IPR petitions. And it was imposed without notice-and-comment regulation.

This "settled expectations" rule has dramatically transformed IPR practice. For the past thirteen years since IPR's inception in 2012, all patents were equally eligible for IPR no matter their age. After all, Congress designed IPR with no deadline for "old" patents. Consistent with that framework, the USPTO regularly instituted IPR and canceled claims for patents of every vintage, including "old" patents. But everything changed this year. Out of nowhere, the Acting Director began denying institution because patents were too "old." In just two months, the USPTO denied 64 IPR petitions on that ground—despite the USPTO's consistent, *decade-plus* practice to the contrary, instituting and resolving IPRs in 2,269 cases with similarly "old" patents.[2] Now, would-be petitioners must scour newly issued patents, predict

---

[2] Jonathan DeFosse et al., *Data Undermines USPTO's 'Settled Expectations' Doctrine*, Law360 (Aug. 29, 2025), *available at* https://www.law360.com/articles/2381350

which might someday be asserted against them (however baselessly), then launch pre-emptive IPR challenges in the first few years of the patent's life—or forfeit their statutory rights to seek IPR.

That rule would be news to Congress, which enacted the AIA without any "old"-patent limit on IPR. It was certainly news to Petitioners, who filed their IPR petitions before the "settled expectations" rule abruptly appeared. Yet the USPTO applied that new rule to Petitioners post-hoc—after they already paid to have their petitions reviewed under the old standards, and after the window for challenging these patents under the new rule had long closed.

And this is only the latest twist in the USPTO's dizzying reconstruction of its institution authority. Over the past few months, the Acting Director has replaced preexisting institution rules with an unpredictable flurry of new ones—all without notice and comment. These novel, erratic, demanding hurdles have already drawn at least four other mandamus challenges.[3]

---

(Appx699-703).

[3] *In re SAP America, Inc.*, No. 25-132 (Fed. Cir., filed June 16, 2025); *In re Motorola Solutions, Inc.*, No. 25-134 (Fed. Cir., filed June 23, 2025); *In re Google LLC, et al.*, No. 25-144 (Fed. Cir., filed Aug. 18, 2025); and *In re HighLevel, Inc.*, No. 25-148 (Fed. Cir., filed Aug. 29, 2025).

Now the USPTO has gone even further, inventing a retroactive "settled expectations" rule and disregarding legal limits along the way. The agency violated due-process anti-retroactivity constraints. It transgressed APA limits on retroactive regulation and requirements of reasoned decisionmaking. It ignored APA notice-and-comment obligations. And most fundamentally, it exceeded the power Congress gave it, by inventing an extra-statutory "settled expectations" rule—violating the APA and the Constitution's separation of powers.

While 35 U.S.C. §314(d) generally bars appeals attacking institution determinations in "ordinary" case-specific "dispute[s]," §314(d) does not bar review of agency "shenanigans," including rulings that violate constitutional rights or exceed statutory authority. *Cuozzo Speed Techs. v. Commerce for Intellectual Prop.*, 579 U.S. 261, 271, 274-75 (2016). The retroactive "settled expectations" rule, unilaterally created from thin air, is a prototypical "shenanigan" requiring judicial redress. Mandamus is the sole mechanism available to obtain that relief, and the Court should grant this petition.

## ISSUES PRESENTED

1. Did the USPTO violate due process by applying its "settled expectations" rule post-hoc to pre-filed petitions?

2.      Did the USPTO violate the APA by applying its "settled expectations"
rule post-hoc, without authority and without considering relevant concerns?

3.      Did the USPTO violate the APA and AIA by skipping notice-and-
comment procedures for its "settled expectations" rule—a new IPR limit
determining stakeholder rights?

4.      Did the USPTO exceed its authority—violating the APA and the
Constitution's separation of powers—by inventing an extra-statutory "settled
expectations" rule for "old" patents?

## BACKGROUND

**I.      Congress established IPR, and the USPTO created its own IPR
institution criteria without notice and comment.**

In enacting the AIA, Congress believed "questionable patents" were "too
easily obtained" and "too difficult to challenge." H.R. Rep. No. 112-98, at 39-40
(2011). It therefore established IPR, allowing anyone to petition the USPTO to
conduct a limited review of granted patents. 35 U.S.C. §311. In the first 9 months of
a patent's life, a different form of USPTO review is available: post-grant review
(PGR). §§321-329. From then on (after 9 months, and after PGR terminates),
Congress made patents eligible for IPR—with no maximum patent age. §311(c).

To decide whether to institute an IPR, Congress instructed the Director to
determine whether "there is a reasonable likelihood that the petitioner would

prevail." §314(a). Congress further instructed the Director to "prescribe regulations" providing "the standards" for "showing" "sufficient grounds to institute a review under section 314(a)." §316(a)(2).

The USPTO repeatedly began—and abandoned—the notice-and-comment process to "prescribe regulations." *Id.* In 2023, it issued an advance notice of proposed rulemaking. 88 Fed. Reg. 24,503 (Appx26-41). In 2024, it issued a notice of proposed rulemaking. 89 Fed. Reg. 28,693 (Appx42-55). In 2025, it reiterated plans "to pursue notice-and-comment rulemaking." Theresa Schliep, *Patent Office Plans Rulemaking For New PTAB Denial Process*, Law360, https://www.law360.com/articles/2324147 (Apr. 17, 2025). But these false-starts are the sum total of the USPTO's efforts. No actual notice-and-comment regulation has issued.

Instead, the USPTO has resorted to "precedential" decisions and "guidance" documents. In this process, it designated as precedential the *Fintiv* factors, governing IPR institution in the face of parallel district-court litigation. *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495, at *2 (PTAB Mar. 20, 2020) (precedential). It then "issue[d] binding agency guidance" governing institution, reaffirming the *Fintiv* factors. Appx19 (Memorandum from USPTO Director to PTAB, *Interim Procedure for Discretionary Denials in AIA Post-Grant Proceedings with*

*Parallel District Court Litigation* (June 21, 2022) (Appx17-25)). At the same time, it announced limits on its own discretion: "the PTAB will not discretionarily deny institution in view of parallel district court litigation" if a petitioner "stipulat[es] not to pursue in a parallel proceeding" grounds "that could have reasonably been raised before the PTAB." Appx19 (a so-called "*Sotera* stipulation"). These were the rules in place when Petitioners filed their IPR petitions.

## II.     Petitioners filed IPR petitions.

In 2024, non-practicing entity Polaris PowerLED Technologies sued Western Digital Corporation and Western Digital Technologies, Inc., alleging infringement of three patents concerning memory systems (U.S. Patent Nos. 8,554,968; 8,601,346; and 9,183,085). Appx248-307.

In January 2025, Petitioners—Western Digital Technologies, Inc. and former-subsidiary[4] Sandisk Technologies, Inc.—filed IPR petitions challenging those patents. They paid $71,250 in non-refundable filing fees (Appx8, Appx12, Appx16 (receipts)) and incurred substantial costs preparing the petitions and supporting declarations.

---

[4] Sandisk Corporation, Annual Report (Form 10-K) (Aug. 20, 2025), *available at* https://investor.sandisk.com/static-files/342a38e2-e204-4f50-ad22-3e3a28e2f6ff.

Western Digital immediately sought a litigation stay pending the IPRs, which the court granted. Appx313-321. Consistent with USPTO guidance, Western Digital also submitted a *Sotera* stipulation, agreeing not to litigate any grounds raised or that could reasonably have been raised in any instituted IPR. Appx308-312.

### III.    After the IPR petitions were filed, and without notice and comment, the USPTO invented a new, evolving "settled expectations" rule.

After Petitioners' filings, the USPTO upended its existing institution criteria with a stream of new pronouncements. In February 2025, the USPTO rescinded the 2022 guidance in a website post. Appx56-57. On March 24, the Chief Administrative Patent Judge issued a memo with new institution rules. Appx58-60. Two days later, the Acting Director issued another memo with more new rules. Appx61-63. That memo announced a new "discretionary consideration": the parties' "[s]ettled expectations," "such as the length of time the claims have been in force." Appx62. The memo explained nothing further about that factor, like what "length of time" qualifies or what connection this has to the AIA. These official actions were taken without notice-and-comment rulemaking, despite the USPTO's statutory obligations and repeated earlier commitments to pursue that path.

In June, again without notice and comment, the Acting Director denied IPR institution for the first time on the ground that "the challenged patent has been in force" too long, "creating settled expectations." *Dabico Airport Sols. Inc. v. AXA*

*Power ApS*, IPR2025-00408, Paper 21, at 2 (AD June 18, 2025) (Appx64-68); *see id.* at 3 ("the longer the patent has been in force, the more settled expectations should be"). She further declared this rule applies irrespective of "actual notice of a patent or of possible infringement." *Id.*

This rule prompted an immediate rash of institution denials (with an emerging pattern roughly tracking a patent's six-year mark). *See* Appx697 (article)[5]; *e.g.*, *Cambridge Indus. USA, Inc. v. Applied Optoelectronics, Inc.*, IPR2025-00433, 2025 WL 1773382 (AD June 26, 2025) (seven- and nine-year-old patents had "strong settled expectations" but five- and six-year-old patents did not); *Amazon.com, Inc. v. VirtaMove, Corp.*, IPR2025-00561, 2025 WL 1913383 (AD July 11, 2025) ("settled expectations" sole reason justifying denial).[6]

---

[5] Ryan Davis, *Stewart Says New Patent Policies Aim to Bring Stability*, Law360 (Sept. 8, 2025), *available at* https://www.law360.com/articles/2364638/stewart-says-new-patent-policies-aim-to-bring-stability (Appx696-698).

[6] Here are further examples (without including the dozens more post-dating the decision here): *Sig Sauer Inc. v. Lone Star Future Weapons*, IPR2025-00410, 2025 WL 1773118 (AD June 26, 2025); *Samsung Elecs. Co. v. Sinotechnix LLC*, IPR2025-00331, 2025 WL 1836417 (Acting Deputy Chief APJ July 2, 2025); *Apotex Inc. v. Alkermes Pharma Ireland Ltd.*, IPR2025-00514, 2025 WL 1853593 (AD July 2, 2025); *Samsung Elecs. Co. v. Mobile Data Techs., LLC*, IPR2025-00535, 2025 WL 1908154 (Acting Deputy Chief APJ July 10, 2025); *NXP USA, Inc. v. Redstone Logics LLC*, IPR2025-00485, 2025 WL 1909554 (AD July 10, 2025); *SAP Am., Inc. v. Valtrus Innovs. Ltd.*, IPR2025-00414, 2025 WL 1909114 (AD July 10, 2025); *Caihong Display Devices v. Corning, Inc.*, IPR2025-00439, 2025 WL 1912302 (AD July 10, 2025); *Google LLC v.*

The agency now updates its institution guidance on a rolling basis through a website.[7]

## IV.    The USPTO denied institution here based solely on "settled expectations."

In mid-July, the Acting Director rejected Petitioners' IPR petitions articulating a single justification: "settled expectations." She repeated standard boilerplate that her "determination" considered "a holistic assessment" and she did not find "persuasive" Petitioners' view that IPR was "an appropriate use of Board resources." Appx2. But she identified only a single concrete consideration favoring denial: "the challenged patents have been in force for approximately nine, twelve, and twelve years, creating strong settled expectations." Appx2. Despite admitting that the agency's prior *Fintiv* guidance supported review (because the litigation "ha[d] been stayed"), she never justified departing from that standard and imposing the agency's new "settled expectations" rule on these IPR petitions retroactively.

---

*VirtaMove, Corp.*, IPR2025-00487, 2025 WL 1913566 (AD July 11, 2025); *Kingston Tech. Co. v. Vervain, LLC*, IPR2025-00614, 2025 WL 1953666 (AD July 16, 2025); *Analog Devices, Inc. v. Number 14 B.V.*, IPR2025-00550, 2025 WL 1953257 (AD July 16, 2025); *Kangxi Commc'n Techs. v. Skyworks Sols., Inc.*, IPR2025-00372, 2025 WL 1959071 (AD July 16, 2025).

[7] *See* Interim Director Discretionary Process, USPTO.gov, *available at* https://www.uspto.gov/patents/ptab/interim-director-discretionary-process.

## STANDARD OF REVIEW

This Court has "jurisdiction to review any petition for a writ of mandamus denying institution of an IPR." *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021). A petitioner must show "a clear and indisputable legal right," the lack of "other adequate method of obtaining relief," and the writ's "appropriate[ness]" "under the circumstances." *Id.* at 1382.

## REASONS WHY THE WRIT SHOULD ISSUE

### I.     The USPTO's errors are clear and indisputable.

A "reviewing court shall" "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §706(2). On four independent grounds, the USPTO's "settled expectations" rule here was unlawful and must be set aside: (1) its retroactive application violated due process; (2) its retroactive application exceeded statutory authority and was arbitrary and capricious; (3) the agency ignored notice-and-comment procedures; and (4) the new institution criterion exceeds statutory authority and the agency's constitutional power.

12

### A.    The USPTO violated due process by retroactively applying a new bar to these IPR petitions.

According to the USPTO, the "settled expectations" rule barred these IPRs because the patents were too "old." But that restriction did not exist when the petitions were filed. Instead, by the time the USPTO sprung the rule on Petitioners, it was far too late to satisfy the rule by (somehow) petitioning when the patents were younger. And it was too late for them to recover the $71,250 in filing fees they wasted (unaware each petition was now futile under a theretofore-unannounced rule).

The USPTO's retroactive application of the "settled expectations" rule flouts due process. "Retroactivity is not favored in the law." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1362 (Fed. Cir. 2005) (citation omitted). "The Due Process Clause limits the extent to which the Government may retroactively alter the legal consequences of an entity's or person's past conduct." *PHH Corp. v. CFPB*, 839 F.3d 1, 46-47 (D.C. Cir. 2016) (Kavanaugh, J.), *order vacated* (Feb. 16, 2017), *reinstated in relevant part*, 881 F.3d 75, 83 (D.C. Cir. 2018). "Due process therefore requires agencies to 'provide regulated parties fair warning of the conduct a regulation prohibits or requires.'" *Id.* (citation omitted). And "an administrative agency may not apply a new rule retroactively when to do so would unduly intrude upon reasonable reliance interests." *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.*, 467 U.S. 51, 61 n.12 (1984).

This Court, applying the "retroactivity doctrine," examines the "'nature and extent of the change in the law,' 'the degree of connection between the operation of the new rule and a relevant past event,' and 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Princess Cruises*, 397 F.3d at 1362, 1364 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994)). "If, under this test, a rule or regulation appears to have a retroactive effect, then the rule or regulation cannot be applied to cases pending at the time of its promulgation." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008).

For example, in *Princess Cruises*, this Court held it impermissible to apply an agency ruling to conduct preceding the ruling (which imposed a new standard governing cruise-ship taxes and a new evidentiary presumption). 397 F.3d at 1363-67. The new ruling qualified as a significant change in law because it established an evidentiary presumption "nowhere to be found in" the "statute or regulations." *Id.* at 1365. The ruling disadvantaged parties for past conduct: cruise lines had not kept records to meet the new evidentiary presumption. *Id.* at 1366. And it would have been unfair to apply the new rule too late for parties to change their behavior to comply. *Id.*[8]

---

[8] In *Princess Cruises*, the agency also sent the party a letter indicating that one rule would apply before imposing a new one retroactively. 397 F.3d at 1366. But that fact

14

Similarly, a "new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime." *Landgraf*, 511 U.S. at 275 & n.29. So too for a new limit on notices of appeal "if it would render invalid a notice that was valid when filed." *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005); *see also Woodward v. DOJ*, 598 F.3d 1311, 1315 (Fed. Cir. 2010) (new burden of proof cannot be applied to already-pending case).

The USPTO violated those anti-retroactivity principles here. It did just what the Supreme Court and this Court have denounced: imposing a new constraint on already-filed IPR petitions (just like complaints or notices of appeal) is impermissible. *See Landgraf*, 511 U.S. at 275; *Durr*, 400 F.3d at 1380.

Applying the "settled expectations" rule here flunks every prong of this Court's retroactivity framework. To begin, a "settled expectations" rule is "nowhere to be found in" the "statutes or regulations" and thus effects a significant change in law. *Princess Cruises*, 397 F.3d at 1365.

---

was not essential; even without it, retroactive application was unlawful. *Carnival Cruise Lines, Inc. v. United States*, 404 F.3d 1312, 1319 (Fed. Cir. 2005). And the entire point of public agency guidance is to assure regulated stakeholders what to expect; the USPTO's surprise retroactive shift here is just as invalid as in *Princess Cruises* and *Carnival Cruise Lines*.

Next, applying this change disadvantaged Petitioners for past events. *See id.* at 1366. The USPTO's "settled expectations" rule penalizes them for not petitioning for IPR sooner, before the patents gained "settled expectations." Yet Petitioners had no idea they needed to do this. To the contrary, as in *Princess Cruises*, there was a "common [industry] understanding" that parties "had no need to" do what the agency's new rule required. *Id.*

The resulting unfairness is obvious. Had Petitioners known the rule—that the patents' age would immunize them from IPR—they could have behaved differently. To meet the USPTO's rule, Petitioners could have searched for these patents and petitioned for IPR years earlier. Petitioners alternatively could have offered to purchase the patents. And certainly, they would not have filed futile IPR petitions, expending over $71,250 in unrecoverable funds.

The USPTO's surprise new rule also destroyed reasonable reliance interests. Petitioners detrimentally relied on the institution standards existing when they filed for IPR. Under those standards, the petitions were meritorious. The USPTO's decision shows as much: it mustered no reason for denying institution besides the new "settled expectations" rule. Appx2. The USPTO even acknowledged the *Fintiv* inquiry *supported* institution (because parallel litigation was already stayed). *Id.*; *see Fintiv*, 2020 WL 2126495, at *2-3. Petitioners had an especially strong expectation

that those pre-existing standards would hold, because the USPTO had repeatedly indicated that any change would come through notice-and-comment rulemaking—and the proposed rules never mentioned "settled expectations." *See supra* 7; 88 Fed. Reg. 24,503 (Appx26-41) (discussing institution discretion and stating "USPTO intends to make policy changes through notice-and-comment rulemaking"); 89 Fed. Reg. 28,693 (Appx42-55) (proposing rules for institution discretion).

The USPTO attempted no explanation for applying the "settled expectations" rule retroactively, either in its decision here or in the earlier decision it cited. Appx2; *Dabico*, IPR2025-00408, Paper 21, at 2-3 (Appx65-66). Nor is any such justification possible. It is unreasonable to induce payment of $71,250 in filing fees by announcing one set of institution standards, only then to deny petitions under a harsher standard.

All that is more than enough to establish a violation of due-process anti-retroactivity principles. *Princess Cruises*, 397 F.3d at 1362; *Rodriguez*, 511 F.3d at 1153. No analysis of other due-process frameworks is necessary. *GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1141 (Fed. Cir. 2015) (when party challenges a law "because it operates retroactively," "we do not think that the outcome of the due process analysis depends upon a determination that a vested right exists").

But for good measure, other frameworks point the same way. The USPTO impaired protected interests. Money is property, and Petitioners lost property—sizeable filing fees—they would not have surrendered had they known of the USPTO's new rule. And the USPTO subverted their property and liberty interests in having their petitions adjudicated fairly under the then-existing standards. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982) ("[The] Due Process Clause has been interpreted as preventing the States from denying potential litigants use of established adjudicatory procedures, when such an action would be the equivalent of denying them an opportunity to be heard upon their claimed rights." (citation and alterations omitted)). Petitioners received no notice or opportunity to be heard "at a time when the deprivation c[ould] still be prevented"—that is, before filing the IPR petitions. *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). Whether assessed as a deprivation of property and liberty without notice and opportunity to be heard, or as a violation of anti-retroactivity doctrine, the use of the "settled expectations" rule here was impermissibly retroactive.

### B.    The USPTO violated the APA by retroactively applying the "settled expectations" rule without authority or reasoned decisionmaking.

Retroactively applying the "settled expectations" rule also violated bedrock APA limits. The USPTO lacked statutory authority to regulate retroactively, 5

18

U.S.C. §706(2)(A)-(C), and in any event failed to consider crucial factors, §706(2)(A), (D).

An agency lacks "power to promulgate retroactive rules unless that power is conveyed by Congress in express terms." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); *see Bd. of Cnty. Comm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 292 (D.C. Cir. 2023). The AIA confers no power—let alone in express terms—to make IPR rules retroactive. Yet the USPTO retroactively penalized Petitioners for noncompliance with a post-hoc rule in all the ways just discussed—including by requiring IPR filings years before the rule existed and refusing to give the petitions the consideration promised when they were filed. *Supra* 16-17.

The USPTO also acted arbitrarily and capriciously, ignoring its basic "mandate to engage in reasoned decisionmaking under the APA." *In re Brunetti*, — F.4th—, 2025 WL 2446503, at *7-8 (Fed. Cir. Aug. 26, 2025) (precedential). Agencies must "develop coherent and rational rules" and "articulate a satisfactory explanation for [an] action including a rational connection between the facts found and the choice made." *Id.* at 7 (citation and quotation marks omitted). Changing policy requires "provid[ing] a reasoned explanation for the change, display[ing] awareness that they are changing position, and consider[ing] serious reliance

19

interests." *FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 568 (2025) (citation and alterations omitted).

The USPTO failed to justify its post-hoc imposition of "settled expectations." It never even attempted "a reasoned explanation" (*id.*) for imposing that new rule retroactively. *Supra* 17.

Indeed, it failed to address *any* relevant consideration. It never acknowledged that the rule did not exist before the IPR petitions were filed or before the patents grew too "old"—let alone "display[ed] awareness" of a changed position, *Wages & White Lion*, 604 U.S. at 568. It mentioned no effect on Petitioners or "reliance interests." *Id.* It never articulated when "settled expectations" arise, leaving stakeholders to scour dozens of decisions to divine some pattern. *Brunetti*, 2025 WL 2446503, at *8 (agencies may not take "an 'I know it when I see it' approach").

And the agency ignored a basic logical defect at the rule's core. Patentees had no "settled expectation" that old patents were immune from challenge until the USPTO decreed it. Parties were always free to challenge a patent's validity, no matter how old. Even today, that remains true in district-court litigation. So it is unclear how patentees could have developed "settled expectations" (and for IPRs alone). And it was impossible for Petitioners to anticipate that the USPTO would create such a rule and impose it retroactively.

The USPTO failed to confront any of that. It could not identify statutory authority or reasoned justification for imposing the new rule retroactively on Petitioners. It did not even try. That APA violation warrants mandamus.

### C. The USPTO violated the APA and AIA by imposing a limitation on institution without notice-and-comment rulemaking.

The "settled expectations" rule violates another basic administrative-law requirement. Notice and comment "assure[s] fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764 (1969). Agency action disregarding that procedural requirement must be set aside. *See, e.g.*, *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affs.*, 464 F.3d 1306, 1317 (Fed. Cir. 2006). The "settled expectations" rule, imposed without notice-and-comment procedures, violates the APA and AIA and should be set aside.

The APA requires notice-and-comment rulemaking for substantive rules. 5 U.S.C. §553. The APA defines as a "rule" any "agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." §551(4). Substantive rules, but not "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice," require notice and comment. §553(b). Rules are "substantive" if they

21

"effect a change in existing law or policy" or "affect individual rights and obligations." *Paralyzed Veterans of Am. v. West*, 138 F.3d 1434, 1436 (Fed. Cir. 1998).

The USPTO's "settled expectations" rule is a rule. It applies generally and prospectively to any IPR petition, and it implements and prescribes a concrete limit on IPR.

The rule is substantive many times over. To begin, it "change[s] existing law and policy," *id.*, by introducing a never-seen-before IPR precondition. Indeed, the agency has been open about a new policy approach. Appx697 (announcing that the USPTO, under current leadership, "has focused on liberally permitting early challenges to patent validity" but believes "the longer a patent has been in force, the stronger and more settled the patent owner's expectations should be").

Moreover, the "settled expectations" rule affects patent challengers' rights by creating a new ground for depriving opportunities to seek patent cancellation through IPR. The USPTO's substantive judgment here that the patents engendered "settled expectations" worth preserving was its only reason for denying IPR. Appx2. Such a rule, which "affects the substantive . . . standards by which the [agency] examines a party's application" is a substantive rule. *In re Chestek PLLC*, 92 F.4th 1105, 1109 (Fed. Cir. 2024); *see also Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1046 (D.C. Cir. 1987) (establishing "factors for determining . . . eligibility" for relief is

22

"the classic example" of a substantive rule); *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1112-13 (D.C. Cir. 1974); *AFL-CIO v. NLRB*, 57 F.4th 1023, 1041 (D.C. Cir. 2023); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 382-83 (D.C. Cir. 2002); *Reeder v. FCC*, 865 F.2d 1298, 1305 (D.C. Cir. 1989).

The rule's substantive impact goes further still. It substantively affects patent owners and the public by establishing a category of "old" patents that are protected against IPR. It also overrides Congress's substantive decisions not to impose a patent-age cap for IPR eligibility or a presumption of validity for older patents. And it affects challengers' rights and obligations by requiring premature IPR challenges early in a patent's life, or forfeiture of IPR rights.

On top of all that, the rule operated substantively especially because the USPTO imposed it retroactively. Notice and comment is required "[w]hen a rule prescribes a timetable for asserting substantive rights," and "the time allotted is so short as to foreclose effective opportunity to make one's case on the merits." *Lamoille Valley R.R. Co. v. I.C.C.*, 711 F.2d 295, 328 (D.C. Cir. 1983). The rule here had the same effect. By creating a retroactive deadline to challenge patents that was impossible for IPR petitioners to meet, the USPTO foreclosed IPR petitioners' opportunity to make their case on the merits. That is another substantive effect that required fair and thorough consideration via notice and comment. *Id.*

23

Finally, the AIA itself separately requires notice and comment in this specific context. The AIA commands that in "setting forth the standards for the showing of sufficient grounds to institute" IPR, the agency "shall prescribe regulations." §316(a)(2); *see also* §312(a)(4) (requiring that requirements for IPR petitions, beyond those already enumerated in §312(a), be established "by regulation"). That means notice-and-comment rulemaking. "[W]hen a statute defines a duty in terms of agency regulations, those regulations are considered legislative rules," which must be issued "pursuant to the [APA's] notice-and-comment requirements." *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 38, 40 (D.C. Cir. 2005); *see MST Exp. v. Dep't of Transp.*, 108 F.3d 401, 402 (D.C. Cir. 1997) (agency conceded that statute requiring prescribing standard "by regulation" requires notice-and-comment rulemaking). This was the backdrop against which Congress enacted §316(a). *Cf. Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1350 (Fed. Cir. 2020) ("There is no indication in the [IPR] statute that Congress . . . intended [the Director] to engage in any rulemaking other than through the mechanism of prescribing regulations."); *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1332 (Fed. Cir. 2017) (en banc) (Moore, J., concurring) (noting agreement among "majority" of en banc Court that where §316 "delegates to the Director the authority *to prescribe regulations* adopting standards, only notice and comment rulemaking by regulation

24

will be given *Chevron* deference"). The USPTO has no excuse for failing to follow this basic procedure.

The resulting chaos underscores the need for notice-and-comment rulemaking. Nobody knows whether "settled expectations" attach at year five or six; whether an IPR petition's strength on the merits will matter; or whether today's rules will apply tomorrow. The law demands more. The USPTO, like all agencies, must follow notice-and-comment procedures to ensure "fairness and mature consideration." *Wyman-Gordon Co.*, 394 U.S. at 764.

> ### D. The USPTO exceeded its authority—in violation of the APA and the Constitution—by inventing an IPR institution criterion untethered to the AIA.

The "settled expectations" rule's most fundamental defect is that the USPTO lacks authority to create it at all. The AIA does not authorize the Director to invent institution criteria unmoored from the statute; and it certainly does not authorize a maximum-patent-age cap on IPR. In imposing the "settled expectations" rule, the USPTO exceeded its statutory authority and usurped Congress's legislative power. 5 U.S.C. §706(2).

> #### 1. Congress did not empower the Director to create extra-statutory institution criteria.

Contrary to the USPTO's belief, the Director does not have unfettered discretion at the institution stage. Congress outlined specific institution criteria for

the Director to consider. *E.g.*, §§314(a), 315(d), 325(d). It granted discretion in applying some of *those* criteria, as well as limited authority to promulgate "regulations" implementing *those* criteria, which the agency has failed to do (§316(a)(2)). But the USPTO instead believes the Director may invent *any* criteria she wishes—even with no basis in the AIA. *See* AD's Resp., *In re Motorola Solutions*, No. 25-134, ECF No. 28 at 8 (Fed. Cir. Aug. 4, 2025) (institution "criteria" is "entirely within the Director's discretion"). This is lawless. Congress did not legislate a reticulated framework for the USPTO to simply disregard. While this Court has occasionally assumed the Director has broad institution discretion, it has not squarely decided the bounds of that authority in the face of the arguments presented here. *E.g.*, *Mylan*, 989 F.3d at 1382; *Saint Regis Mohawk Tribe v. Mylan Pharms. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018). This fundamental question needs a considered answer. This Court should confirm the Director's power is limited by Congress's design.

In the AIA, Congress instructed the agency to *apply* statutory requirements, not create new ones. It specified the core merits threshold in §314(a); it instructed parties to address the "requirement[s] *of this chapter*" (§313 (emphasis added)); and it set forth other reticulated considerations. Some are firm bars (§315(b)'s time limit and §315(e)'s estoppel). Some are discretionary considerations (§315(d)'s docket-

management authority and §325(d)'s anti-duplication authority). Congress did not do that work so the USPTO could rewrite the scheme on the Director's whim.

To be sure, the Director has broad "discretion" within the AIA's statutory markers. *Cuozzo*, 579 U.S. at 273. But discretion *within* markers is not discretion to fashion new boundaries. And the AIA nowhere grants the USPTO power to ignore Congress's framework and invent *new* criteria. "Administrative agencies are creatures of statute"; they "possess only the authority that Congress has provided." *Nat'l Fed'n of Indep. Bus. v. Dep't of Lab., Occupational Safety & Health Admin.*, 595 U.S. 109, 117 (2022).

And Congress carefully specified when the Director may exercise discretion in IPR institution. Take §325(d). There, Congress provided that, in instituting any "proceeding under this chapter" (including IPRs), the Director "may" consider whether "the same or substantially the same prior art or arguments previously were presented to the Office." §325(d). Congress granted the Director discretion in applying that criterion (the Director "may" reject a petition). And it authorized accompanying regulations to flesh out the standard. §316(a)(2). Those regulations must consider effects on "the patent system" (by avoiding inconsistent outcomes on the same prior art or arguments) and "efficient [agency] administration" (by avoiding redundant proceedings). §316(b). But none of this matters under the

27

USPTO's current position. If the USPTO already has unfettered discretion to consider anything it chooses at institution, it does not need §325(d)'s *redundant* authority to do the same thing. That express section should not be read as a mere suggestion (at best) or superfluous (at worst). *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 574 (1995) (avoiding such "redundan[cy]").

Or take §315(d).[9] There, Congress authorized the USPTO to "stay, transfer, consolidat[e], or terminat[e]" related proceedings. §315(d). This expressly authorizes the Director to manage the agency's docket when overlapping proceedings are pending before the agency. Again, Congress granted discretion in applying that criterion (the Director "*may* determine" how such proceedings "may proceed" (emphasis added)), and authorized implementing regulations. §§316(a)(2), (b). Yet none of this is necessary under the USPTO's unbounded approach.

The USPTO invokes §314(a) as the source of the Director's discretion. *See* AD's Resp., *In re SAP Am., Inc.*, No. 25-132, ECF No. 39 at 12 (Fed. Cir. July 18, 2025); *see also* Appx2 (denying petitions under §314(a)); Appx61 (Stewart Memo) (identifying §314(a) as authority for Director's "discretion"); *Fintiv*, 2020 WL

---

[9] Section 325(d) includes nearly identical language for PGRs.

2126495, at *2. But that subsection grants no such authority. Section 314(a) textually imposes a direct requirement for institution: "a reasonable likelihood that the petitioner would prevail." This sets the critical threshold. *See* §314(a). It does not grant the Director freestanding authority to impose *any* criteria the Director wishes—much less to abridge the universal "scope" of IPR (§311(b)). A provision that speaks in the negative and limits the Director's discretion cannot be construed as a sweeping, affirmative grant of power to deny IPR based on *any* criteria the Director chooses.

Nor does it help the USPTO that §314(a) does not *mandate* institution when the merits threshold is met. Even for petitions meeting that threshold, Congress supplied other criteria *outside* §314(a) that could still defeat institution. *E.g.*, §§315(b), (e), 315(d), 325(d). But it was *Congress* that chose these additional criteria. It nowhere empowered the USPTO to make different choices.

Congress's express grant of discretion in two accompanying AIA sections confirms it did not grant broader discretion here. For derivation proceedings, Congress provided "the Director *may* institute" if the requisite "standards . . . are met." §135(a)(1) (emphasis added). Similarly, for joinder petitions, "the Director, *in his or her discretion, may* join" parties otherwise satisfying §314. §315(c) (emphasis added). No comparable authority exists for IPR institution. "When Congress

29

includes particular language in one section of a statute but omits it from a neighbor, we normally understand that difference in language to convey a difference in meaning." *Bittner v. United States*, 598 U.S. 85, 94 (2023); *see also Gallo v. Dep't of Transp.*, 725 F.3d 1306, 1310 (Fed. Cir. 2013) (expressio unius). Congress expressly conferred discretion elsewhere in the AIA, but not for instituting IPRs; the Court should enforce that congressional choice.

### 2.    Congress did not authorize the Director to deny institution because a patent is "old."

The USPTO's new "settled expectations" rule falls outside the AIA's institution criteria and thus fails. Indeed, the rule conflicts with express congressional judgments in the AIA.

The AIA contains no cap on how "old" a patent may be to remain IPR-eligible. That was a deliberate design decision, confirmed by several additional congressional choices.

For one, Congress used a patent-age cutoff for IPR's predecessor (*inter partes* reexamination) and IPR's AIA counterpart (PGR), but not IPR. Under the prior scheme, Congress had excluded certain old patents from *inter partes* reexamination. It limited eligibility to patents issued on applications "filed . . . on or after" November 29, 1999, the act's effective date. American Inventors Protection Act of 1999, Pub. L. No. 106–113, §4608, 113 Stat. at 1501A–572. But when Congress

replaced *inter partes* reexamination with IPR, it imposed no such age cutoff. Yet Congress chose differently for PGR, imposing an age cutoff there. *See* AIA §3(n)(1) (limiting PGR to patents with an effective filing date on or after March 16, 2013). Thus, for IPRs, Congress expressly *rejected* the same sort of categorical "old-patent" exclusion the Director has now implemented.

For another, Congress imposed a continuing patent-age cap for PGR but not IPR. PGR is available only until the patent is 9 months old. §321(c). IPR has no such maximum. The USPTO has no license to recalibrate that deliberate balance.

In addition, Congress chose a uniform, weaker presumption of validity in IPR. §§316(e), 282; *see Cuozzo*, 579 U.S. at 279. All patent claims, no matter their age, face cancellation in IPR under a lower preponderance-of-the-evidence threshold. *Id.* Congress created no extra presumption of validity for older patents.

The agency cannot invent its own rules to frustrate this intentional congressional scheme. 5 U.S.C. §706(2)(A), (C). The USPTO's new "settled expectations" rule adds a patent-age cap to IPR and an artificial presumption of validity for "old" patents. Appx2. That rule flouts Congress's choices, violates the separation of powers, and is an illegitimate basis for denying IPR.

**II.    The remaining mandamus criteria are satisfied.**

**A.    The USPTO's errors are reviewable in mandamus.**

When the USPTO exceeds legal constraints in denying institution, this Court applies mandamus review. *Mylan*, 989 F.3d at 1380. "In fact, when the Board denies institution, our mandamus jurisdiction is especially important." *Id.* Although "the appeal bar in §314(d) prevents any direct appeal," it does not "divest[] [this Court] of mandamus jurisdiction." *Id.* Section 314(d) therefore does not bar mandamus review of Petitioners' claims.

*First*, the USPTO's violations of constitutional constraints (due process and separation of powers) are subject to mandamus review. *Mylan*, 989 F.3d at 1382-83.

*Second*, its APA violations in regulating retroactively are reviewable. Despite §314(d), "judicial review remains available consistent with the [APA], which directs courts to set aside agency action 'not in accordance with law' or 'in excess of statutory jurisdiction, authority, or limitations.'" *SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018) (quoting 5 U.S.C. §706(2)(A), (C)). Section I.B, *supra*, rests on *the APA's* requirements that the agency not exceed delegated authority and consider relevant factors. This is not a challenge "where the invoked provisions of law directly govern institution." *Apple Inc. v. Vidal*, 63 F.4th 1, 11-14 (Fed. Cir. 2023).

*Third*, the agency's notice-and-comment obligations are reviewable. As this Court already explained, §314(d) does not reach "the Director's choice of whether to use notice-and-comment rulemaking." *Id.* at 14-15.

While *Mylan* rejected a notice-and-comment challenge to a USPTO decision, it did so on the merits: the mandamus petitioner had not established "a clear and indisputable right to relief." 989 F.3d at 1382; *id.* (not "explor[ing] the outer contours of possibility" for mandamus); *Apple*, 63 F.4th at 12 n.5 (characterizing *Mylan* as "holding mandamus standard not met for challenge to denial based on *Fintiv* instructions"). Indeed, that petitioner only offered a few relevant sentences in the introduction and background sections of its briefing. *See* Opp. to Mot. to Dismiss, *Mylan Labs. Ltd. v. Janssen Pharma., N.V.*, No. 21-1071, ECF No. 16 at 1, 5-6 (Fed. Cir. Dec. 7, 2020). That petitioner's case-specific failure does not insulate the USPTO from review here.

*Fourth*, this Court can stop the agency from creating institution criteria beyond its power. Judicial review is available for "shenanigans" like these, where the USPTO has "exceeded [its] statutory authority." *SAS*, 584 U.S. at 371; *see also Cuozzo*, 579 U.S. at 275; 5 U.S.C. §706(2). The "shenanigans" here are obvious. The Acting Director has been open about her disagreement with Congress's IPR system—"the low preponderance of evidence standard" and the lack of any

"window of time that closes to stop these challenges." Appx696 (article). Those are *features* of the statutory design. Yet the Acting Director has wielded institution power to *frustrate* them.

The agency-power challenge here therefore falls outside §314(d), which bars review of "'an ordinary dispute about the application of' an institution-related statute." *Thryv, Inc v. Click-To-Call Techs., LP*, 590 U.S. 45, 54 (2020) (quoting *Cuozzo*, 579 U.S. at 271); *see, e.g., id.* (§315(b)); *Cuozzo*, 579 U.S. at 271 (§312(a)(3)); *ESIP Series 2, LLC v. Puzhen Life USA, LLC*, 958 F.3d 1378, 1385-86 (Fed. Cir. 2020) (§312(a)(2)). The issue here goes well beyond case-specific interpretation or application of institution criteria.

Instead, this Court retains the ability to answer the more fundamental question of the agency's authority to create institution standards in the first place. "§314(d) does not 'enable the agency to act outside its statutory limits.'" *SAS*, 584 U.S. at 371 (quoting *Cuozzo*, 579 U.S. at 275); *see* 5 U.S.C. §706(2). This reflects a deeply rooted principle: "courts have recognized that an implicit and narrow exception to [a] bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate." *Hanauer v. Reich*, 82 F.3d 1304, 1307 (4th Cir. 1996); *see Leedom v. Kyne*, 358 U.S. 184 (1958). This case fits squarely within that preservation of judicial review. The Acting

34

Director's creation of new, extra-statutory criteria is a "blatant violation[] of [a] legal constraint[]" that activates judicial review. *See IGT v. Zynga Inc.*, 144 F.4th 1357, 1367 (Fed. Cir. 2025).

Nor are any of this Court's decisions to the contrary. *Apple* preserved mandamus review. 63 F.4th at 12 n.5 (reserving "'whether mandamus might be available in an extraordinary case,'" since *Apple* was "not a mandamus case" (quoting *Thryv*, 590 U.S. at 54 n.6)). And regardless, *Apple* did not address a challenge to underlying agency power. The Court and parties assumed the Director *could* establish extra-statutory criteria. *Apple* held only that §314(d) barred a claim that the Director's criteria misapprehended §315(b)'s time bar. That does not address the antecedent question whether Congress granted the Director unilateral authority to create institution criteria outside the AIA's statutory framework—a materially different question. *Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303, 1310, n.1 (Fed. Cir. 2021) ("[W]hen an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises." (citation omitted)).

Nor does *Mylan* bar review of that question. As discussed, *Mylan* merely rejected the particular contentions there under the mandamus standard. *Supra* 33. And *Mylan* had no need to scrutinize the Director's institution authority because all

involved *presumed* the Director was "free" to refuse institution based on "reasons of administrative efficiency." 989 F.3d at 1382 (citing *Heckler v. Chaney*, 470 U.S. 821, 830-32 (1985)). Petitioners here, by contrast, have squarely raised whether the agency in fact has that discretion. And it is well-settled that "Congress may limit an agency's exercise of enforcement power" "by setting substantive priorities" or "by otherwise circumscribing an agency's power to discriminate among . . . cases it will pursue." *Heckler*, 470 U.S. at 833. Here, Congress set boundaries that the agency has repeatedly exceeded, making this case a prototypical mandamus candidate.

*    *    *

If, however, the Court believes these fundamental questions are somehow unreviewable under existing circuit law, the Court should revisit those decisions en banc—initially or otherwise. And Petitioners reserve the right to seek such review.

### B.    Petitioners have no other adequate means of relief.

Mandamus is the proper mechanism for "judicial review" of "decisions denying institution," "[g]iven that there is no adequate remedy by way of direct appeal," which this Court holds is barred by §314(d). *In re Palo Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022) (citation omitted).[10]

---

[10] For similar reasons mandamus is available, Petitioners believe §314(d) should not be read to foreclose appeals challenging policies exceeding agency authority and

### C.    Mandamus is appropriate under the circumstances.

Mandamus is a critical check on unlawful agency action. It is appropriate "to decide 'basic' and 'undecided' questions" and "to further supervisory or instructional goals where issues are unsettled and important." *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) and *In re Queen's Univ. at Kingston*, 820 F.3d 1287, 1291 (Fed. Cir. 2016)). Mandamus is also warranted when "important to 'proper judicial administration.'" *In re Cray Inc.*, 871 F.3d 1355, 1358-59 (Fed. Cir. 2017) (quoting *Schlagenhauf*, 379 U.S. at 110 and *In BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011)).

This case is a prime mandamus candidate. It presents basic, undecided questions regarding the USPTO's authority to rewrite Congress's institution standards and impose, post-hoc, an extra-statutory "settled expectations" rule. *See BigCommerce*, 890 F.3d at 981. Those questions implicate the core functioning of Congress's patent system and IPR scheme. *See Cray*, 871 F.3d at 1358-59. These actions have sweeping consequences for an overwhelming number of stakeholders.

---

violating statutory and constitutional mandates. But Petitioners acknowledge that under this Court's existing precedent, no direct appeal from IPR institution denials is available—and no such appeal is necessary given the availability of mandamus.

The USPTO has unwound Congress's work and categorically excluded an entire body of patents from review—immunizing "old" patents less than a third of the way into their lifespan. The USPTO's refusal to stay within statutory bounds and follow notice-and-comment procedures has produced turmoil; the agency unleashes a constantly shifting landscape of confusion and uncertainty in a process Congress designed to be controlled by statute and regulation. Anything the USPTO says today could be reversed via website post tomorrow (at the whim of a current or future Director). This makes informed decisions impossible for IPR petitioners, patent owners, and investors—with serious effects on patent transactions, licensing, and litigation.

The agency's erratic conduct exceeds lawful bounds. Mandamus exists to constrain unlawful action and force agencies to act within their lawful authority. This Court is ideally situated to enforce Congress's scheme and hold the USPTO to its statutory and constitutional obligations.

## CONCLUSION

The Court should grant the petition and vacate the three non-institution decisions. The Court should direct the USPTO to reconsider institution solely under the statutory criteria, not the agency's extra-statutory framework. At a minimum, the Court should direct the USPTO to reconsider institution without the USPTO's

new "settled expectations" rule and solely under the guidance in place when the

petitions were filed.

Dated: September 17, 2025                    Respectfully Submitted,

                                            **HAYNES AND BOONE, LLP**

                                            */s/ Debra J. McComas*
                                            Debra J. McComas
                                            Daniel L. Geyser
                                            Michael Qian
                                            2801 N. Harwood St., Suite 2300
                                            Dallas, TX 75201
                                            Phone: (214) 651-5375
                                            *Debbie.McComas@haynesboone.com*
                                            *Daniel.Geyser@haynesboone.com*
                                            *Michael.Qian@haynesboone.com*

                                            Angela M. Oliver
                                            888 16th Street NW, Suite 300
                                            Washington, DC 20006
                                            Phone: (202) 654-4552
                                            *Angela.Oliver@haynesboone.com*

                                            **Attorneys for Petitioners Sandisk
                                            Technologies, Inc. and Western
                                            Digital Technologies, Inc.**

39

## CERTIFICATE OF COMPLIANCE

1.      This petition complies with the type-volume limitation of Fed. R. App. P. 21(d) because:

■      this petition contains **7,793** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■      this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Equity A font.

*/s/ Debra J. McComas*
Debra J. McComas

## PROOF OF SERVICE

I certify that on September 17, 2025, I caused a paper copy of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent by express carrier to lead counsel for respondent Polaris PowerLED Technologies, LLC at the following address:

David Alberti
KRAMER ALBERTI LIM & TONKOVICH, LLP
950 Tower Lane, Suite 1725
Foster City, CA 94404
(650) 825-4300

I further certify that I caused courtesy electronic copies of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent to David Alberti at dalberti@krameralberti.com and to the following additional counsel of record for respondent:

Sal Lim (slim@krameralberti.com)
Larry McDonough (lmcdonough@krameralberti.com)
Andrew G. Hamill (ahamill@krameralberti.com)
Jason A. Fitzsimmons (jfitzsimmons-PTAB@sternekessler.com)
Richard M. Bemben (rbemben-PTAB@sternekessler.com)
Michael D. Specht (mspecht-PTAB@sternekessler.com)
Tyler Dutton (tdutton-PTAB@sternekessler.com)

I further certify that I caused an electronic copy of this document (and the attached appendix, entries of appearance, certificates of interest, and notices of related cases) to be sent to efileSO@uspto.gov and a paper copy of this document to be sent by an express carrier to the following address:

Office of the Solicitor
United States Patent and Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, VA 22313-1450

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: September 17, 2025                    */s/ Debra J. McComas*
                                             Debra J. McComas