No. 2025-152

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————————————

IN RE: SANDISK TECHNOLOGIES, INC., WESTERN DIGITAL
TECHNOLOGIES, INC.,

*Petitioners.*

———————————————

On Petition for Writ of Mandamus
from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in
Nos. IPR2025-00515, IPR2025-00516, and IPR2025-00517

———————————————

### DIRECTOR'S RESPONSE TO PETITION FOR WRIT OF MANDAMUS

———————————————

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, D.C. 20530*
  *(202) 514-4819*

NICHOLAS T. MATICH
  *Acting Solicitor*
ROBERT J. McMANUS
  *Acting Deputy Solicitor*
PETER J. AYERS
  *Senior Counsel for Patent*
  *Law and Litigation*
FAHD H. PATEL
PETER J. SAWERT
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and*
  *Trademark Office*

# TABLE OF CONTENTS

INTRODUCTION ............................................................... 1

BACKGROUND ............................................................. 6

ARGUMENT ................................................................. 11

    I.  Petitioners' Statutory Complaints Are Barred
       By 35 U.S.C. § 314(d). ...................................... 11

    II. To The Extent Petitioners Have Raised
       Cognizable Due-Process Claims, They Are
       Meritless. ...................................................... 15

    III.Petitioners' Separation of Powers Claims Are
       Simply Meritless Statutory Claims. ............................ 25

    IV.Petitioners Cannot Satisfy The Other
       Mandamus Factors............................................... 30

        A.  Petitioners Have Alternate Means of Relief.......... 30

        B.  Mandamus Relief Is Inappropriate Under the
           Circumstances. ......................................... 31

CONCLUSION.............................................................. 33

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alberico v. United States,*
  783 F.2d 1024 (Fed. Cir. 1986)................................................. 21

*Allied Chem. Corp. v. Daiflon, Inc.,*
  449 U.S. 33 (1980) (per curiam) .............................................. 17

*American Mfrs. Mut. Ins. Co. v. Sullivan,*
  526 U.S. 40 (1999) ...............................................................16, 18

*Apple Inc. v. Fintiv, Inc.,*
  No. IPR2020-00019, 2020 WL 2126495
  (P.T.A.B. Mar. 20, 2020)......................................................7, 9, 15

*Apple Inc. v. Vidal,*
  63 F.4th 1 (Fed. Cir. 2023) ...............................................*passim*

*Barnhart v. Devine,*
  771 F.2d 1515 (D.C. Cir. 1985)................................................ 31

*Barton v. Barr,*
  590 U.S. 222 (2020) ................................................................ 29

*Bloch v. Powell,*
  348 F.3d 1060 (D.C. Cir. 2003)................................................ 17

*Bryan v. McDonald,*
  615 F. App'x 681 (Fed. Cir. 2015) (unpublished)...................... 31

*Cheney v. U.S. Dist. Ct. for D.C.,*
  542 U.S. 367 (2004) ...................................................1, 15, 30, 32

*Cleveland Bd. of Educ. v. Loudermill,*
  470 U.S. 532 (1985) ................................................................ 21

*Cuozzo Speed Techs., LLC v. Lee,*
    579 U.S. 261 (2016) ........................................................*passim*

*Dabico Airport Solutions Inc. v. AXA Power ApS,*
    IPR2025-00408, Paper 21
    (Acting Director Jun. 18, 2025).......................................9, 10, 21

*Dalton v. Specter,*
    511 U.S. 462 (1994) ................................................................ 26

*In re Dominion Dealer Sols., LLC,*
    749 F.3d 1379 (Fed. Cir. 2014)............................................15, 30

*Durr v. Nicholson,*
    400 F.3d 1375 (Fed. Cir. 2005)................................................ 23

*Fornaro v. James,*
    416 F.3d 63 (D.C. Cir. 2005) ................................................... 31

*General Plastic Indus. Co. v. Canon Kabushiki Kaisha,*
    No. IPR2016–01357, 2017 WL 3917706
    (P.T.A.B. Sept. 6, 2017) .............................................................. 6

*GPX Int'l. Tire Corp. v. United States,*
    780 F.3d 1136 (Fed. Cir. 2015)............................................17, 18

*Heckler v. Chaney,*
    470 U.S. 821 (1985) ................................................................ 28

*Interstate Com. Comm'n v. Brotherhood*
    *of Locomotive Eng'rs,*
    482 U.S. 270 (1987) ................................................................ 19

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994) ......................................................22, 23, 24

*In re Miller,*
    828 F. App'x 717 (Fed. Cir. 2020) ........................................... 17

*Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*,
    989 F.3d 1375 (Fed. Cir. 2021)...........................................*passim*

*In re Palo Alto Networks, Inc.*,
    44 F.4th 1369 (Fed. Cir. 2022) ................................................... 31

*Pierre v. West*,
    211 F.3d 1364 (Fed. Cir. 2000).................................................. 18

*Princess Cruises, Inc. v. United States*,
    397 F.3d 1358 (Fed. Cir. 2005).............................................22, 23

*Rodriguez v. Peake*,
    511 F.3d 1147 (Fed. Cir. 2008).................................................. 23

*SAS Institute, Inc. v. Iancu*,
    584 U.S. 357 (2018) ................................................................. 13

*SCA Hygiene Prods. Ag v. First Quality*
    *Baby Prods., LLC*,
    580 U.S. 328 (2017) ............................................................29, 30

*In re Synthes (U.S.A.)*,
    346 F. App'x 583 (Fed. Cir. 2009) ............................................. 17

*The Board of Regents of State Colleges v.Roth*,
    408 U.S. 564 (1972) ................................................................. 16

*Thryv, Inc. v. Click-to-Call Technologies, LP*,
    590 U.S. 45 (2020) .............................................................11, 12

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005) ............................................................16, 17

*United States v. Arthrex, Inc.*¸
    594 U.S. 1 (2021) ...............................................................27, 33

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952) ................................................................. 26

**Statutes**

5 U.S.C. § 701(a)(2) ....................................................26, 27, 28

35 U.S.C. § 314.................................................................*passim*

35 U.S.C. § 315.................................................................*passim*

35 U.S.C. § 318.................................................................... 6

35 U.S.C. § 319.................................................................... 6

35 U.S.C. § 325(d) ........................................................27, 28, 29

**Other Authorities**

37 C.F.R. § 42.4(a)................................................................ 6

37 C.F.R. § 42.15(a)(1) ........................................................ 20

37 C.F.R. § 42.15(a)(2) ........................................................ 20

78 Fed. Reg. 4233................................................................ 20

U.S. Const. amend. V.......................................................... 16

# INTRODUCTION

Congress has committed the decision to institute an inter partes review (IPR) to the United States Patent and Trademark Office (USPTO) Director's discretion and expressly insulated the exercise of that discretion from appeal. Accordingly, this Court has made clear that the only circumstance in which it can review the USPTO's decision to deny institution of an IPR is through a petition for a writ of mandamus, which may be brought *solely* based on colorable claims that the USPTO exercised its discretion in an unconstitutional manner. *See Mylan Lab'ys Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1382 (Fed. Cir. 2021). And to obtain the "drastic and extraordinary" mandamus remedy, a petitioner must show that it has (1) a "clear and indisputable" right to relief; (2) no "alternative avenues of relief"; and (3) that "the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 379-81 (2004) (quotation marks omitted).

Petitioners seek that extraordinary remedy based on their dissatisfaction with Acting Director Stewart's application of agency

guidance to deny institution of their IPR petitions.[1] Petitioners do not claim that they lacked notice of the agency guidance. Nor do Petitioners dispute having opportunities to be heard on how the agency guidance should affect the exercise of institution discretion. Rather, Petitioners contend that the agency guidance applied by Acting Director Stewart violates the America Invents Act (AIA), the Administrative Procedure Act (APA), and the Constitution. Petitioners' complaints do not approach the very high bar for mandamus relief.

To begin, much of Petitioners' argument is barred by 35 U.S.C. § 314(d), which precludes judicial review of claims that the USPTO's institution decisions violate a statute, including the AIA and APA. Petitioners suggest that § 314(d) has no role in this Court's jurisdiction over a petition for a writ of mandamus. But this Court has clearly recognized that its mandamus jurisdiction to review institution

_____

[1] Deputy Director Coke Morgan Stewart was the Acting Director at the time of the challenged agency actions. Appx1. On September 22, 2025, John A. Squires was sworn in as the Director. *See* https://www.uspto.gov/about-us/news-updates/uspto-welcomes-new-director-john-squires (last visited, Oct. 15, 2025). This brief refers to Acting Director Stewart when describing her actions taken at the time she was Acting Director.

decisions is limited to colorable *constitutional* claims. Much of the petition addresses statutory grievances which are nonjusticiable in this mandamus action.

Petitioners' due-process complaints are equally unavailing. Petitioners cannot evade the limits on this Court's mandamus jurisdiction by simply putting a "due-process" label on its APA arguments. And even insofar as the petition identifies a constitutional due-process claim, Petitioners fail to establish a clear and indisputable right to relief. Petitioners have no entitlement to either IPR institution or any particular set of criteria the agency might use to determine if institution is warranted—both matters that are entirely within the Director's discretion. And even if Petitioners could establish the type of entitlement that might support a constitutionally protected interest, Petitioners received the due-process requisites of notice and the opportunity to be heard; the USPTO afforded Petitioners opportunities to make their case for institution under the agency guidance. Furthermore, the agency guidance does not implicate the presumption

against retroactivity. And Petitioners' asserted reliance interest was entirely unreasonable.

Petitioners' separation-of-powers arguments fail because they are, at bottom, simply assertions that the agency exceeded its statutory authority, not constitutional claims. And those assertions are in any event meritless. Petitioners seek to read out § 314's broad grant of discretion to the Director—and read in limitations on that discretion that have no foundation in the relevant statutory text—in contradiction of settled precedent from this Court and the Supreme Court.

Petitioners similarly cannot satisfy the mandamus standard's other requirements. Petitioners say that they have no other avenue for relief because this Court has said that review of institution decisions is available only through mandamus. But that just highlights the fact that Petitioners are attempting to obtain judicial review of decisions this Court has recognized are within the USPTO's unreviewable discretion. Petitioners claim no independent harm from any asserted constitutional violation, asserting only a desire to invalidate patent claims in their preferred forum. Petitioners have several "alternative avenues of relief"

through which they may seek invalidation of the challenged patent claims, as Petitioners remain free to avail themselves of district court litigation or ex parte reexamination.

Petitioners cannot otherwise show that mandamus relief would be appropriate. Congress gave the Director wide latitude to manage IPR proceedings, insulating institution decisions from appellate review. The guidance at issue here reflects the practical reality that each Director must balance requests for administrative review of patent claims against the other needs of the USPTO and the patent system more generally. When Acting Director Stewart took office in February 2025, she faced a significantly different situation than existed in 2022: the backlog and pendency of ex parte appeals that the Board needed to address was higher, the number of Administrative Patent Judges was lower, and the agency was subject to a hiring freeze. Petitioners' request for a judicial order forcing the Director to adhere to a particular rubric for discretionary institution of IPR proceedings is not an "appropriate" use of the writ.

## BACKGROUND

1. When Congress created inter partes review, it set out various statutory bars precluding the USPTO Director from instituting an IPR, but no set of circumstances in which institution is required. *See* 35 U.S.C. §§ 314(a), 315. Congress further provided that although the agency's final written decision with respect to patentability is subject to appeal in this Court, *see id.* §§ 318, 319, the determination by the Director whether to institute an IPR is "final and nonappealable," *id.* § 314(d). Both this Court and the Supreme Court have repeatedly made clear that the USPTO is under "no mandate to institute review" and the "decision to deny [an IPR] petition is a matter committed to the Patent Office's discretion." *Mylan*, 989 F.3d at 1382 (quoting *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 273 (2016)). Thus, "[t]he Director is permitted, but never compelled, to institute an IPR," and "no petitioner has a right to … institution." *Id.*

2. Historically, the Director delegated broad discretion over whether to institute IPR proceedings to the Board, *see* 37 C.F.R. § 42.4(a), and Directors have set out various criteria for the Board to use in employing that delegated authority, *see, e.g., General Plastic*

6

*Indus. Co. v. Canon Kabushiki Kaisha*, No. IPR2016–01357, 2017 WL 3917706 (P.T.A.B. Sept. 6, 2017) (precedential) (discussing discretionary factors for multiple IPR petitions). Because IPR proceedings often coincide with parallel district court litigation, for years Directors have instructed the Board to consider a non-exhaustive list of factors to address concerns about redundancy or wastefulness. These factors are set forth in *Apple Inc. v. Fintiv, Inc.*, No. IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) (precedential). On June 21, 2022, former USPTO Director Katherine Vidal issued a memorandum (June 2022 Memo) setting out "interim" guidance, pending formal rule making, regarding the Board's application of the *Fintiv* factors for the Board to follow when exercising the Director's delegated institution discretion. Appx17-25. On February 28, 2025, Acting Director Stewart rescinded the June 2022 Memo (Rescission). Appx56. On March 24, 2025, then-Chief Administrative Patent Judge Scott Boalick issued a memorandum providing additional guidance as to how the Board should proceed considering the Rescission. Appx58-60.

7

3. On March 26, 2025, Acting Director Stewart issued a memorandum entitled "Interim Processes for PTAB Workload Management," in order "[t]o ensure that the PTAB continues to meet its statutory obligations as to *ex parte* appeals, while continuing to maintain its capacity to conduct AIA proceedings." Appx61. The memo outlined a new briefing schedule that bifurcated briefing between (1) discretionary considerations and (2) merits and other non-discretionary statutory considerations. Appx61-63. The briefing on discretionary considerations would "address all relevant considerations," including parallel litigation, serial petitions, and other considerations including "[s]ettled expectations of the parties, such as the length of time the claims have been in force." Appx62. The guidance outlined in the memo applied prospectively to "IPR and PGR proceedings where the deadline for the patent owner to file a preliminary response has not yet passed." Appx63.[2]

---

[2] The new USPTO Director, John Squires, has since delegated his discretion over IPR institution decisions to now-Deputy Director Stewart. *See* https://www.uspto.gov/sites/default/files/documents/dsco-delegation.pdf.

Later, Acting Director Stewart discretionarily denied institution in *Dabico Airport Solutions Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21 (Acting Director Jun. 18, 2025) ("*Dabico*"). Appx64-68. In *Dabico*, Acting Director Stewart "exercise[d] discretion to deny institution [] based on a holistic assessment of all of the evidence and arguments presented." Appx66. *Dabico* further noted that there, "the challenged patent has been in force almost eight years, creating settled expectations." Appx65. Because in its briefing, the petitioner did not provide "persuasive reasons why the Office should review the challenged patent . . . the Office is disinclined to disturb the settled expectations of Patent Owner in this instance." Appx66.

4. This mandamus petition concerns three IPR petitions filed by Petitioners SanDisk Technologies, Inc. and Western Digital Technologies, Inc. challenging the claims of patents held by Polaris PowerLED Technologies, Inc. *See* Appx69 (IPR2025-00515 documents cited as exemplary). Following the bifurcated briefing schedule, Polaris filed a brief arguing that Acting Director Stewart should exercise her discretion to deny institution in view of the *Fintiv* factors and other

9

considerations. Appx160-197. Polaris argued, among other things, the presence of settled expectations because the challenged patents issued roughly a decade before the IPR challenges. Appx190. Petitioners substantively responded to the settled expectations argument in their opposition (Appx218-219) and sur reply (Appx241-243), both filed after the *Dabico* decision. Petitioners argued, for example, that Polaris does not have settled expectations because it is a non-practicing entity that only recently acquired the challenged patents for the purpose of asserting the patents in litigation. In a combined decision, Acting Director Stewart discretionarily denied all three petitions "based on the totality of the evidence and arguments the parties have presented." Appx2. Citing *Dabico*, she noted that the challenged patents "have been in force for approximately nine, twelve, and twelve years, creating strong settled expectations, and Petitioner does not provide any persuasive reasoning why an *inter partes* review is an appropriate use of Board resources. In the absence of any such information, the Office is disinclined to disturb the settled expectations of Patent Owner." Appx2 (cleaned up). The Acting Director noted that "[a]lthough certain

10

arguments are highlighted" in her denial decision "the determination to exercise discretion to deny institution is based on a holistic assessment of all of the evidence and arguments presented." Appx2. Petitioners now seek a writ of mandamus to overturn Acting Director Stewart's decision.

## ARGUMENT

## I.    Petitioners' Statutory Complaints Are Barred By 35 U.S.C. § 314(d).

In § 314(d), Congress expressly precluded judicial review of the Director's "determination … whether to institute an inter partes review," providing that the decision is "final and nonappealable." 35 U.S.C. § 314(d). While various statutory strictures preclude the Director from granting a petition to institute an IPR, *see, e.g.*, 35 U.S.C. § 315(a), (b), the Supreme Court in *Cuozzo* held that the "decision to *deny* a petition [for IPR] is a matter committed to the Patent Office's discretion," *Cuozzo*, 579 U.S. at 273 (emphasis added). Accordingly, "no petitioner has a right to … institution." *Mylan*, 989 F.3d at 1382. And the Supreme Court further clarified in *Thryv, Inc. v. Click-to-Call Technologies, LP*, 590 U.S. 45 (2020), that § 314(d)'s bar on appeals from institution decisions means that there is no judicial review of

11

"challenges grounded in statutes related to the institution decision." *See id.* at 56 (cleaned up).

This Court has recognized that § 314(d) does not bar this Court from "protect[ing] [its] prospective jurisdiction through mandamus" where the USPTO issues "[a] decision denying institution," which "prevents the Board from issuing any final decision that falls within [this Court's] direct appellate jurisdiction." *Mylan*, 989 F.3d at 1380. But importantly, this Court has recognized that its mandamus jurisdiction is limited by Congress's decision to commit the institution decision to the Director's discretion and to prohibit appeals of such decisions: "[T]here is no reviewability of the Director's exercise of [her] discretion to deny institution except for colorable constitutional claims." *Id.* at 1382. "Given the limits on [the Court's] reviewability," *ultra vires* or other statutory arguments "cannot be a basis for granting [a] petition for mandamus" over a decision denying IPR institution. *Id.* at 1382-83.

These principles foreclose Petitioners' mandamus petition insofar as it raises claims regarding statutory requirements, including those in the AIA and APA. Whatever constitutional claims § 314(d) might

12

permit litigants to raise regarding institution denial through a mandamus petition, they do not include "run-of-the-mill statutory interpretation" questions reframed as constitutional violations. *Apple Inc. v. Vidal*, 63 F.4th 1, 13 (Fed. Cir. 2023); *see Mylan*, 989 F.3d at 1381-83 (rejecting two statutory challenges "[g]iven the limits on [the Court's] reviewability" through mandamus of decisions not to institute IPR). Thus, Petitioners' claims that Acting Director Stewart's guidance violated the APA by retroactively applying settled expectations without authority or reasoned decision making (Pet. 18-21), violated the APA and AIA by forgoing notice-and-comment rulemaking (Pet. 21-25), and exceeded her statutory authority (Pet. 25-31) necessarily fail.

Petitioners attempt to circumvent *Mylan* by relying on *SAS Institute, Inc. v. Iancu*, which stated that consistent with the APA, "judicial review remains" available if the USPTO has engaged in shenanigans "by exceeding its statutory bounds." 584 U.S. 357, 371 (2018). But *SAS* neither involved mandamus jurisdiction nor sought review of an institution decision. *See id.* (specifically noting that "SAS does not seek to challenge the Director's conclusion that" institution

13

was warranted). Under this Court's holding in *Mylan*—issued against the backdrop of *SAS*—Petitioners cannot bring an APA challenge to the agency's settled expectations guidance via mandamus. *Mylan*, 989 F.3d at 1379-82 (explaining that the "extraordinary circumstances" for which mandamus is available to review "a denial of institution" are limited to "colorable constitutional claims" regarding "the Director's exercise of his discretion to deny institution").

Rather, as this Court has held, a party may raise certain APA arguments through a district-court action where the party, as a plaintiff, establishes standing to seek "prospective relief only," rather than relief in connection with any prior institution-related decision. *Apple*, 63 F.4th at 10; *see id.* at 14-17 (concluding plaintiff adequately demonstrated standing to bring a notice-and-comment challenge by showing "a substantial risk that the harm will occur in the future because of the instructions" it contended should have gone through notice-and-comment procedures) (quotation marks omitted)). As a remedy, this Court did not contemplate reversal of past institution denials, but rather a "change[] in a way favorable to" the plaintiff in the

14

challenged "instructions" the Director issued to guide the exercise of delegated institution discretion. *Id.* at 17. Importantly, however, this Court in *Apple* reiterated that § 314(d) bars APA challenges to even "content-focused challenges," whether those challenges target an institution decision "the Director personally made … accompanied by an explanation containing the" reasoning a plaintiff contends is unlawful, or an institution decision made by the Director's delegatee. 63 F.4th at 13. Here, to the extent Petitioners can challenge any aspect of the USPTO's institution-related practices under the APA and AIA, they raise their arguments in the wrong court, through the wrong type of action, seeking the wrong sort of relief.

## II. To The Extent Petitioners Have Raised Cognizable Due-Process Claims, They Are Meritless.

To be eligible for mandamus relief, a petitioner must show a "clear and indisputable" right to relief. *In re Dominion Dealer Sols., LLC*, 749 F.3d 1379, 1381 (Fed. Cir. 2014) (quotation marks omitted); *see also Cheney*, 542 U.S. at 380-81. Petitioners cannot establish a "clear and indisputable" constitutional violation warranting a writ of mandamus, much less one requiring the agency to revisit Acting Director Stewart's

decision to deny IPR institution under Petitioners' preferred instructions. To the contrary, Petitioners' contention that the USPTO violated due-process principles in exercising its discretion to deny the relevant IPR petitions is entirely without merit.

A. To begin with, it is far from clear that Petitioners have the requisite interest to support a due-process challenge. The Due Process Clause protects against the deprivation "of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest" in liberty or property. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

The Supreme Court has explained that "[t]o have a property interest in a benefit," a person must "have a legitimate claim of entitlement to it," not just "an abstract need or desire" or "a unilateral expectation of" the benefit. *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *The Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). And "a benefit is not a protected entitlement if government officials may grant or deny it in their

discretion." *Id.*; *see also, e.g., Bloch v. Powell*, 348 F.3d 1060, 1069 (D.C.

Cir. 2003) ("[W]hen a statute leaves a benefit to the discretion of a

government official, no protected property interest in that benefit can

arise.") (collecting cases).[3]

Petitioners err in suggesting that *GPX Int'l. Tire Corp. v. United

States*, permits them to establish a due-process violation without having

a protectable property or liberty interest. 780 F.3d 1136, 1141 (Fed.

Cir. 2015); Pet. 17. In *GPX*, this Court determined that showing that

---

[3] Similarly, the Supreme Court has stated that "[w]here a matter is committed to discretion, it cannot be said that a litigant's right to a particular result is 'clear and indisputable.'" *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (per curiam); *see also, e.g., In re Miller*, 828 F. App'x 717, 718 (Fed. Cir. 2020) (applying *Allied* to petition re evidentiary decision); *In re Synthes (U.S.A.)*, 346 F. App'x 583, 584 (Fed. Cir. 2009) (applying *Allied* to petition re district court's stay of proceedings). Nothing in the statute requires the Acting Director to provide guidance on how she or her delegates will exercise her institution discretion. Petitioners do not contend that the settled expectations guidance is constitutionally impermissible, instead basing their challenge entirely on matters within the USPTO Director's discretion. *See infra* pp. 18-19; *see also Cuozzo*, 579 U.S. at 273 (explaining the "decision to deny a petition [for institution of IPR] is a matter committed to the Patent Office's discretion"). It is thus unclear how Petitioners could satisfy the mandamus standard even if it could somehow make out a protected property interest in an institution decision the agency never has to grant.

17

there exists "a vested right" in a particular rate of import duties was not "a threshold test." 780 F.3d at 1141. But nowhere did this Court suggest that it was contravening well-established precedent that a plaintiff must show some constitutionally protected liberty or property interest to succeed on a due-process claim. *See, e.g.*, *Pierre v. West*, 211 F.3d 1364, 1366 (Fed. Cir. 2000) ("The threshold inquiry is whether the complainant has been deprived of a constitutionally protected property interest.") (citing *American Mfrs.*, 526 U.S. at 59). Nor did the Court in *GPX* need to reach the question of whether there existed a protected property interest because it determined that there was no due-process violation on other grounds. 780 F.3d at 1142-45.

To the extent Petitioners argue that they have a property interest in having their IPR petitions considered under their preferred standard articulated in the June 2022 Memo (and without consideration of the settled expectations guidance) (Pet. 18), this argument lacks merit. Both granting IPR institution and articulating guidance about institution criteria are entirely discretionary matters and thus cannot support Petitioners' asserted interest. *See Mylan*, 989 F.3d at 1382

("The Director is permitted, but never compelled, to institute an IPR. And no petitioner has a right to such institution."). Indeed, nothing in the statute requires the Director or his delegees to explain the decision whether to institute an IPR. To the contrary, "[n]othing in the unreviewability principle [of § 314(d)], … turns on whether the Director has provided an explanation." *Apple*, 63 F.4th at 13. "[T]he Supreme Court has rejected the notion that 'if the agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable.'" *Id.* (quoting *Interstate Com. Comm'n v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987)). Accepting Petitioners' asserted interest—to have its petitions considered under a particular set of entirely discretionary criteria the agency was not obliged to announce—would permit any litigant to transform an agency's transparency regarding its exercise of discretion into a constitutional entitlement through the simple expedient of artful framing. Petitioners have no protected interest in having its petitions resolved pursuant to any specific guidance by the Director.

Petitioners' claim that the paid IPR fees constitute a protected property interest (Pet. 18) is equally meritless. Petitioners merely paid an IPR "request fee" for each petition under 37 C.F.R. § 42.15(a)(1), which does not entitle Petitioners to anything other than the USPTO's evaluation of the petitions for institution purposes. Petitioners pay a separate "Post-Institution fee" under 37 C.F.R. § 42.15(a)(2) for which they may seek a refund given the Director's denial of institution. 78 Fed. Reg. 4233; *see also* https://www.uspto.gov/patents/ptab/faqs#type-browse-faqs_207638. And nothing in the AIA entitles Petitioners to an evaluation of a petition's merits in an institution decision. Section 314(c) requires a written notification of "the Director's determination under [§ 314(a)]." The § 314(a) determination includes both the Director's discretion to institute and, in the absence of discretionary denial, a determination on the merits. *See Cuozzo*, 579 U.S. at 273. Petitioners' payment of request fees cannot constitute a constitutionally protected property interest in a specific institution outcome.

B. Even if Petitioners could demonstrate a protected property interest in IPR institution, they still could not establish a due-process violation. "Once a property interest is shown, all due process requires is notice and an opportunity to be heard." *Alberico v. United States*, 783 F.2d 1024, 1027 (Fed. Cir. 1986) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)). Here, the USPTO gave notice of its settled expectations guidance in the form of a written memo (Appx61) and in the *Dabico* decision (Appx64-68). Petitioners took advantage of opportunities to be heard in their bifurcated discretionary denial briefing, i.e., in their opposition brief (Appx218-219) and their sur reply brief (Appx241-243), where they briefed the effects of the settled expectations guidance on institution of their IPR petitions.

Accordingly, the USPTO satisfied any due-process rights Petitioners had in the IPR institution process. The relief Petitioners seek is not to be heard on their IPR petition in light of the settled expectations agency guidance—because they were heard—but for the USPTO to apply a former Director's discretionary criteria and reach a different outcome. *See* Pet. 2. The Due Process Clause requires no such

21

remedy and certainly does not guarantee Petitioners a specific outcome once heard.

C. Petitioners' invocation of retroactivity and reliance principles (Pet. 13-17) similarly fails. A "retroactive" rule is one that "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994); *see also Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1362 (Fed. Cir. 2005). Petitioners incorrectly suggest that Acting Director Stewart applied the settled expectations guidance retroactively. Acting Director Stewart implemented the settled expectations guidance prospectively by denying institution *after* promulgating the guidance.

But even assuming Acting Director Stewart's application of the settled expectations guidance did operate retroactively with respect to Petitioners, this Court has made clear that the retroactivity analysis examines "not merely whether a change has occurred," but "the *nature and extent* of the change in the law," as well as "familiar considerations

22

of fair notice, reasonable reliance, and settled expectations." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008) (first quoting *Princess Cruises,* 397 F.3d at 1363; and then quoting *Landgraf*, 511 U.S. at 270).

Here, the settled expectations guidance did not affect any of Petitioners' rights, because an IPR petitioner never has a right to institution, let alone any particular set of discretionary criteria regarding institution. *Princess Cruises*, relied upon by Petitioners (Pet. 14), therefore, is inapposite. *Princess Cruises* involved an agency ruling that "worked a significant change in the law" for "already completed cruises" where Princess could not rebut a presumption that all passengers disembarked at a particular layover port, thereby resulting in Princess being overcharged port fees. 397 F.3d at 1367. *See also Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005) (concluding a rule change "would have impermissible retroactive effect if it would render invalid a notice" of appeal a litigant who had a statutory right to file); Pet. 15 (discussing *Durr*). By contrast, here, Acting Director Stewart's denial of institution did not abridge Petitioners' rights; the IPR statute contains no criteria for institution and the USPTO is "never

23

compelled[] to institute an IPR." *Mylan*, 989 F.3d at 1382. Whether IPR is instituted or not, Petitioners' substantive rights and obligations are unchanged. The institution decision neither invalidates the challenged patent claims nor ends a petitioner's duty not to infringe a patent. Petitioners may prefer to challenge patent validity through IPR, but the institution or non-institution of IPR does not impose any substantive legal consequences on Petitioners' conduct—past, present, or future.

Nor can Petitioners articulate any reasonable reliance interest in the former Director's discretionary guidance. (Pet. 16.) To the extent Petitioners suggest that they altered their litigation strategy in expectation of a potential IPR, Pet. 16, Petitioners do not explain why such considerations would be relevant to a retroactivity analysis, which focuses on the "rights or obligations of the parties," rather than which "tribunal … is to hear the case." *Landgraf*, 511 U.S. at 274 (explaining that rules that "take[] away no substantive right but simply change[] the tribunal that is to hear the case" are not subject to the presumption against retroactivity (quotation marks omitted)).

24

Moreover, such reliance would be unreasonable given the discretionary nature of IPR institution decisions. The fundamental and mistaken premise driving Petitioners' argument is, absent the settled expectations guidance, they would have been entitled to institution of IPR. *See* Pet. 16. But as explained above, "no petitioner has a right to … institution." *Mylan*, 989 F.3d at 1382. Petitioners also had no reasonable basis to assume that the June 2022 Memo would remain in place indefinitely or would apply to any IPR petitions it might file. Like guidance from earlier Directors that the June 2022 Memo updated—and like the guidance now in place—the June 2022 Memo was not the subject of any justifiable reliance interests. As ever, the Director remains free to update agency policy or guidance regarding institution discretion in light of new circumstances or policy changes.

## III.  Petitioners' Separation of Powers Claims Are Simply Meritless Statutory Claims.

Petitioners contend that the Acting Director's decision to use her discretion to deny institution based on the settled expectations of the patent owners created "an extra-statutory" criterion that violated "the Constitution's separation of powers." Pet. 5-6. But this argument simply

puts a constitutional label on arguments that are based solely on

Petitioners' view of the AIA. *See* Pet. 25-31. The Supreme Court has

carefully distinguished "between claims of constitutional violations and

claims that an official has acted in excess of his statutory authority."

*Dalton v. Specter*, 511 U.S. 462, 472 (1994). The Constitution is

implicated if executive officers rely on it as an independent source of

authority to act, as in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S.

579 (1952), or if the officers rely on a statute that itself violates the

Constitution, *see Dalton*, 511 U.S. at 473 & n.5. But claims alleging

simply that an official has "exceeded his statutory authority are not

'constitutional' claims." *Id.* at 473. Petitioners' arguments that Acting

Director Stewart's reasons for discretionarily denying the petitions

contravene the AIA do not state a constitutional claim and are thus not

cognizable in this mandamus action. *See supra* pp. 11-15.

    In any event, Petitioners' statutory arguments are meritless.

Petitioners' contentions that Congress limited the Director's discretion

to deny institution (Pet. 25-31) contradict settled precedent. The

Supreme Court, invoking both 5 U.S.C. § 701(a)(2) of the APA and

35 U.S.C. § 314(a) of the AIA, held that "the agency's decision to deny a petition is a matter *committed to the Patent Office's discretion.*" *Cuozzo*, 579 U.S. at 273 (emphasis added); *see also United States v. Arthrex, Inc.,* 594 U.S. 1, 8 (2021).

Petitioners acknowledge that the Director has broad discretion to institute review under *Cuozzo* but argues that Congress provided "markers" and "boundaries" in §§ 325(d) and 315(d) limiting that discretion. Pet. 27. But Petitioners identify no actual limitations in these provisions' language, instead seeking to transform language reflecting the breadth of the Director's flexibility in managing duplicative proceedings into a fetter on the Director's discretion to deny institution. It is unsurprising that the Supreme Court and this Court have repeatedly examined the AIA and failed to find such extratextual strictures on the Director's ability to decline to initiate an administrative proceeding.  *See Cuozzo*, 579 U.S. at 273 (relying on § 701(a)(2) to find that denying institution is committed to the USPTO's discretion); *see also Mylan*, 989 F.3d at 1382; *Apple Inc.*, 63 F.4th at 15 (referencing "[t]he general rule that non-enforcement choices are

committed to agency discretion by law."); *see also Heckler v. Chaney*, 470 U.S. 821, 831–32, 836 (1985) (explaining that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)").

Moreover, the language of §§ 325(d) and 315(d) is not superfluous in light of the broad discretion granted in § 314. Rather, the language of §§ 325(d) and 315(d) affords the Director specific authorities to address "Multiple Proceedings," including "providing for stay, transfer, consolidation, or termination" of such matters. 35 U.S.C. § 315(d); *see id.* § 325(d) (same). And § 325(d)'s reference to the Director's ability to decline to initiate various proceedings is not limited to IPR, and only emphasizes the Director's discretion across multiple forms of USPTO processes, rather than limiting the Director's discretion to deny IPR. Indeed, Petitioners' suggestion that the Director's ability to apply "discretionary considerations" in denying IPR institution is limited to "§ 315(d)'s docket-management authority and § 325(d)'s anti-duplication authority" is in square conflict with decisions of this Court and the Supreme Court. *See Mylan*, 989 F.3d at 1382 (noting as an "example"

28

that "the Director is free … to determine that for reasons of

administrative efficiency an IPR will not be instituted); *Cuozzo*, 579

U.S. at 273 (institution denial committed to USPTO discretion by law).[4]

Petitioners argue that the text of § 314 cannot provide the

Director with broad discretion because § 314(a) "speaks in the negative"

and does not mimic discretionary language elsewhere in the AIA in

§ 135(a)(1) and § 315(c). Pet. 28-30. But as discussed above, the

Supreme Court has already held that the decision not to institute IPR

proceedings is "committed to agency discretion by law." *Cuozzo,*

579 U.S. at 273. Petitioners' argument that the settled expectations

guidance is not written in the statute (Pet. 30-31) is similarly inapposite

in view of congressional intent to provide the Director with discretion

over IPR institution. Amici's attempt to analogize this case to *SCA*

---

[4] Even if §§ 325(d) and 315(d) were redundant of the Director's broad
discretion in § 314, "redundancy in one portion of a statute is not a
license to rewrite or eviscerate another portion of the statute contrary
to its text." *Barton v. Barr*, 590 U.S. 222, 239 (2020); *see also id*
("redundancies are common in statutory drafting—sometimes in a
congressional effort to be doubly sure, sometimes because of
congressional inadvertence or lack of foresight, or sometimes simply
because of the shortcomings of human communication.").

*Hygiene Prods. Ag v. First Quality Baby Prods., LLC*, 580 U.S. 328
(2017) (ECF No. 9-2 at 6) fails for the same reason. Unlike Congress's
choice there to "enact[] a statute of limitations" and thus "speak[]
directly to the issue of timeliness and provide[] a rule for determining
whether a claim is timely enough to permit relief," *SCA Hygiene*, 580
U.S. at 334, here Congress did not speak to any circumstance in which
the Director is obliged to institute an IPR, leaving the ability to deny
institution entirely to his discretion.

## IV.    Petitioners Cannot Satisfy The Other Mandamus Factors.

Even if they could meet the mandamus standard's demanding
merits bar, Petitioners could not satisfy the remaining two factors: the
absence of "adequate alternative means to obtain the relief" sought and
a showing that "the writ is appropriate under the circumstances."
*Dominion Dealer Sols.*, 749 F.3d at 1381 (quotation marks omitted); *see
also Cheney*, 542 U.S. at 380-81.

### A.    Petitioners Have Alternate Means of Relief.

In a single sentence, Petitioners contend that they have no
alternative means of relief because this Court has stated that "there is
no adequate remedy by way of direct appeal." Pet. 36 (quoting *In re Palo*

30

*Alto Networks, Inc.*, 44 F.4th 1369, 1374 (Fed. Cir. 2022)). But the only harm Petitioners claim is the denial of one avenue for challenging patent claims.[5] There is no question that there are other avenues for Petitioners to pursue validity challenges, including in district court or ex parte reexamination. Petitioners' abbreviated discussion does not address these obvious alternative means of relief, so they cannot carry their burden to show that the alternatives are inadequate. And the fact that the alternate relief available is not a party's preferred type does not make that relief inadequate or support a grant of mandamus. *See Fornaro v. James*, 416 F.3d 63, 69 (D.C. Cir. 2005); *Barnhart v. Devine*, 771 F.2d 1515, 1527 (D.C. Cir. 1985); *Bryan v. McDonald*, 615 F. App'x 681, 684 (Fed. Cir. 2015) (unpublished).

## B. Mandamus Relief Is Inappropriate Under the Circumstances.

Finally, "even if the first two prerequisites [for mandamus] have been met, the issuing court, in the exercise of its discretion, must be

---

[5] In a hypothetical case, a petitioner might contend that the USPTO violated the Constitution in the course of denying institution in a way that inflicted some independent harm, e.g., by violating the Equal Protection Clause. But here, Petitioners assert no such harm.

satisfied that the writ is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. For the reasons discussed above, (1) any constitutionally protected interest Petitioners can identify is marginal at best; (2) Petitioners had notice and an opportunity to be heard regarding the settled expectations agency guidance; and (3) Petitioners may still pursue their invalidity defenses in the district court litigation or file ex parte reexamination requests.

But even beyond Petitioners' inadequate legal showing and multiple other routes to challenging patent claims, Petitioners seek an inappropriate exercise of this Court's mandamus authority. Petitioners ask this Court to force the current USPTO leadership to abandon its policy guidance in favor of a prior Director's view of how to exercise the broad discretion Congress entrusted to the USPTO Director. Petitioners cast this Director's policy determinations as "immunizing old patents" (Pet. 38) and seek to reverse policy determination reflected by the relevant guidance. *See* Appx61-63; Appx64-68. That is not the system Congress enacted. Issuing the writ Petitioners request would not only inappropriately encroach on that statutory discretion, it would raise

political-accountability concerns, hamstringing the current Director from responding to evolving conditions facing the agency and making his own policy judgments. *See Arthrex*, 594 U.S. at 21. Nothing in these circumstances indicates that this is the sort of extraordinary situation that could warrant this Court's issuance of an extraordinary writ.

## CONCLUSION

The Court should deny the petition for a writ of mandamus.

BRAD HINSHELWOOD
LAURA E. MYRON
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7228*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave. NW*
  *Washington, D.C. 20530*
  *(202) 514-4819*

*/s/ Fahd H. Patel*
NICHOLAS T. MATICH
  *Acting Solicitor*
ROBERT J. McMANUS
  *Acting Deputy Solicitor*
PETER J. AYERS
  *Senior Counsel for Patent*
   *Law and Litigation*
FAHD H. PATEL
PETER J. SAWERT
  *Associate Solicitors*
  *Office of the Solicitor*
  *U.S. Patent and*
   *Trademark Office*

October 16, 2025

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing Director's Response to Petition for Writ of Mandamus complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 5,982 words, excluding the table of contents, table of authorities, and signature block, as measured by the word-processing software used to prepare this filing.

Dated: October 16, 2025

*/s/ Fahd H. Patel*
Fahd H. Patel