No. 25-152

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## IN RE SANDISK TECHNOLOGIES, INC., WESTERN DIGITAL TECHNOLOGIES, INC.,

*Petitioners.*

## REPLY IN SUPPORT OF
## PETITION FOR A WRIT OF MANDAMUS

**On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board, in Nos. IPR2025-00515, IPR2025-00516, IPR2025-00517**

### HAYNES AND BOONE, LLP

Debra J. McComas
Daniel L. Geyser
Michael Qian
2801 N. Harwood Street, Suite 2300
Dallas, TX 75201
Phone: (214) 651-5375

Angela M. Oliver
888 16th Street NW, Suite 300
Washington, DC 20006
Phone: (202) 654-4552

October 30, 2025

*Counsel for Petitioners Sandisk Technologies, Inc. and Western Digital Technologies, Inc.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................... 2

I.    The USPTO's errors are clear, indisputable, and largely uncontested. ..................................................................................... 2

    A.    The USPTO's retroactive application of the "settled expectations" rule violated due process. ................................... 2

    B.    The USPTO's retroactive application of the "settled expectations" rule violated the APA. ....................................... 9

    C.    The USPTO's failure to use notice-and-comment rulemaking violated the APA and AIA. ................................... 9

    D.    The USPTO exceeded authority by inventing an institution criterion untethered to the AIA. ........................... 10

        1.    The USPTO may not invent extra-statutory institution criteria. ............................... 10

        2.    The "settled expectations" rule exceeds the USPTO's authority and violates the AIA. ................................................. 12

II.    The remaining mandamus criteria are satisfied. ................................. 13

    A.    The USPTO's errors are reviewable. ....................................... 13

    B.    Petitioners have no other means of relief. ................................ 17

    C.    Mandamus is appropriate. ....................................................... 18

CONCLUSION ....................................................................................... 19

CERTIFICATE OF COMPLIANCE ....................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Bristol-Myers Squibb Co.*,
    IPR2025-00601, 2025 WL 1911881 (July 10, 2025) ............................................. 8

*Apple Inc. v. Vidal*,
    63 F.4th 1 (Fed. Cir. 2023) ...................................................15

*Azar v. Allina Health Servs.*,
    587 U.S. 566 (2019) ................................................................. 9

*Bowen v. Mich. Acad. of Fam. Physicians*,
    476 U.S. 667 (1986) ...............................................................15

*Cuozzo Speed Techs. v. Lee*,
    579 U.S. 261 (2016) ...............................................................16

*Dickinson v. Zurko*,
    527 U.S. 150 (1999) ............................................................. 14

*Durr v. Nicholson*,
    400 F.3d 1375 (Fed. Cir. 2005) ......................................... 5

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) ................................................................. 7

*GPX Int'l Tire Corp. v. United States*,
    780 F.3d 1136 (Fed. Cir. 2015) ...................................... 6, 7

*Guerrero-Lasprilla v. Barr*,
    589 U.S. 221 (2020) ........................................................... 14

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
    849 F.3d 1034 (Fed. Cir. 2017) ......................................... 9

*Landgraf v. USI Film Prods.*,
    511 U.S. 244 (1994) ..........................................................5, 7

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982) ................................................................ 6

*Louisiana Pub. Serv. Comm'n v. FCC*,
476 U.S. 355 (1986) ...............................................................13

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V*,
989 F.3d 1375 (Fed. Cir. 2021) ..................................... 15, 17

*NKT Photonics Inc. v. Omni Continuum LLC*,
IPR2025-00839, 2025 WL 2350139 (Aug. 13, 2025) ......... 8

*Oil States Energy Servs. v. Greene's Energy Grp.*,
584 U.S. 325 (2018) ...............................................................13

*Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*,
11 F.4th 1363 (Fed. Cir. 2021) ............................................. 8

*Princess Cruises, Inc. v. United States*,
397 F.3d 1358 (Fed. Cir. 2005) ..........................................3, 7

*Rodriguez v. Peake*,
511 F.3d 1147 (Fed. Cir. 2008) .......................................2, 5, 7

*SAS Inst., Inc. v. Iancu*,
584 U.S. 357 (2018).....................................................13, 14, 16

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) ...............................................................13

*Sprint Corp. v. FCC*,
315 F.3d 369 (D.C. Cir. 2003) ............................................. 9

*Taylor Energy Co. v. Dep't of the Interior*,
990 F.3d 1303 (Fed. Cir. 2021) ......................................... 12

*Thryv, Inc. v. Click-To-Call Techs., LP*,
590 U.S. 45 (2020)............................................................ 14, 16

*West Virginia v. EPA*,
597 U.S. 697 (2022) ....................................................... 11, 12

## Statutes

35 U.S.C. §311 ................................................................................. 4, 5

35 U.S.C. §314 ...........................................................................*passim*

35 U.S.C. §315 ................................................................................ 10, 11

35 U.S.C. §325 ................................................................................ 10, 11

## Other Authorities

90 Fed. Reg. 48335 (Oct. 17, 2025) ............................................... 10

## INTRODUCTION

Respondents barely defend the USPTO's "settled expectations" rule on the merits. The following remains uncontested. Before the USPTO announced it, nobody had *any* expectation (settled or otherwise) that "old" patents were somehow free from challenge in IPR—and nobody could anticipate a rule denying institution on that basis. The USPTO imposed its new "settled expectations" rule long after it was too late for Petitioners to satisfy the rule or avoid wasting filing fees. The USPTO violated the APA several times over: regulating retroactively without authority, failing to engage in reasoned decisionmaking, and disregarding notice-and-comment obligations. And no statutory text grants the USPTO power to invent institution rules untethered from the AIA, much less one limiting IPR for "old" patents.

Unable to refute these violations, Respondents instead contend this Court cannot do anything about it. According to Respondents, because institution is discretionary and unreviewable, the USPTO is free from basic obligations that govern any normal agency. The USPTO need not comply with due process because a petitioner cannot show a protected interest, and no relief would be available "even if it could." USPTO Br. 16-25 & n.3. The USPTO can flout the APA and no court

1

can correct the error. USPTO Br. 11-15. The USPTO is free to exceed Congress's limited delegation because those violations are unreviewable. *Id.*

The Court should not countenance this unauthorized assertion of power. The USPTO transgressed fundamental obligations governing all agencies; this is not some ordinary dispute over institution or anything contemplated by 35 U.S.C. §314(d). Mandamus exists to correct clear, serious violations, like those here. The agency's actions *define* "shenanigans" and warrant immediate correction.

## ARGUMENT

### I.    The USPTO's errors are clear, indisputable, and largely uncontested.

The USPTO committed multiple legal violations, and Respondents tellingly muster little response on the merits.

### A.    The USPTO's retroactive application of the "settled expectations" rule violated due process.

1. Respondents do not deny the USPTO rejected these IPR petitions based only on a new rule invented after the petitions were filed. Nor do they deny it was too late for Petitioners to satisfy that rule (by petitioning when the patents were younger) or avoid wasting $71,250 in filing fees. Pet. 13.

This violates this Court's "three-part *Princess Cruises* test." *Rodriguez v. Peake*, 511 F.3d 1147, 1153 (Fed. Cir. 2008); Pet. 15-16. *First*—undisputedly—the "settled expectations" rule "changes the law in a significant way" because it

imposes an IPR limit "nowhere to be found in" the "statute or regulations." *Princess Cruises, Inc. v. United States*, 397 F.3d 1358, 1365 (Fed. Cir. 2005). *Second*—undisputedly—the change has "a significant connection with past events" because it penalizes Petitioners for not seeking IPR in the past. *Id.* at 1366. *Third*—undisputedly—if Petitioners had notice, they could have avoided harm (*e.g.*, by petitioning earlier, purchasing the patents, or not wasting filing fees). Pet. 16. Imposing a new rule post-hoc, when it "cannot possibly be met," "strongly implicates fairness considerations." *Princess Cruises*, 397 F.3d at 1366.

Respondents quibble at the third step whether Petitioners had reasonable-reliance interests. USPTO Br. 24-25; Polaris Br. 16. But IPR petitions are filed as a matter of statutory right. Petitioners do not need "entitlement" to institution (*contra* USPTO Br. 25) to be entitled to fair notice and *lawful* consideration without arbitrary, post-hoc rules. Nor does this merely affect "litigation strategy." *Contra* USPTO Br. 24. The USPTO prejudiced Petitioners' concrete rights: it imposed a new rule after Petitioners could meet or avoid it, terminating their IPR claims midstream and wasting their filing fees.

Equally off-base, Respondents assert it was unreasonable for Petitioners to rely on the USPTO's own institution guidance (effective when these IPR petitions

were filed). USPTO Br. 25; Polaris Br. 16.[1] For one, even without that guidance, Petitioners could not anticipate any "settled expectations" rule. For another, the whole point of public guidance is to *guide the public*. Relying on USPTO guidance was eminently reasonable—especially when the USPTO indicated any change would come through notice-and-comment rulemaking (a point Respondents ignore). Pet. 16-17. Respondents' contrary position is limitless. In their view, the USPTO can announce any rule, foster detrimental reliance, fill its coffers with fees, then pull the rug—with zero scrutiny. The Court should reject that proposition.

Even more aggressively, Respondents contend due process is inapplicable in IPR because institution is discretionary and does not resolve patent validity. USPTO Br. 23-25; Polaris Br. 15, 18-19. Yet the "settled expectations" rule certainly affects Petitioners' rights and obligations. It eviscerated a right to meaningful review of these IPR petitions. *See* §§311, 314. It imposed a retroactive obligation years in the past. It newly penalized Petitioners for past action (and inaction). And it denied them access to IPR review that existed when the petitions were filed. Moreover, Respondents' argument proves too much. If due-process claims fail just because

---

[1] Polaris (at 15 n.4) notes the 2022 guidance applied post-hoc to pending proceedings, which is irrelevant because it significantly pre-dated these IPR petitions.

there is no "right to institution" (USPTO Br. 23), the agency could toss incoming petitions in the trash or resolve institution by flipping coins.

Anti-retroactivity limits govern situations like this. A new IPR rule limiting petitions is no different from a "new rule concerning the filing of complaints," *Landgraf v. USI Film Prods.*, 511 U.S. 244, 275 n.9 (1994), or notices of appeal, *Durr v. Nicholson*, 400 F.3d 1375, 1380 (Fed. Cir. 2005). *See* Pet. 14-15. All are case-opening requests for relief rather than the ultimate "substantive" adjudication. *See* USPTO Br. 23-25; Polaris Br. 15-16. All are situations where the litigant has no right to any particular outcome. *See* USPTO Br. 23-25; Polaris Br. 15-16. Just as a litigant "ha[s] a statutory right to file" a notice of appeal (USPTO Br. 23), a petitioner has a statutory right to file an IPR petition, §311(a). And a new rule is not "prospective[]" merely because a case is still pending. *Contra* USPTO Br. 22; Polaris Br. 14-15. The rule is impermissibly retroactive if it targets a *specific event* (the filing) and that event is already complete. *Landgraf*, 511 U.S. at 270; *Durr*, 400 F.3d at 1380.

2. The USPTO (at 22) insists upon an unnecessary due-process framework: whether protected interests were impaired without notice and opportunity to be heard. Yet the *Princess Cruises* test suffices to establish impermissible retroactivity (*Rodriguez*, 511 F.3d at 1153), and anti-retroactivity challenges do not "depend[]

5

upon" any "vested right" inquiry (*GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1141 (Fed. Cir. 2015)). Pet. 17. Contrary to the USPTO's misreading (at 17-18), *GPX* squarely rejected that an anti-retroactivity "due process challenge" could be "foreclosed" simply by "failure to establish a vested right." 780 F.3d at 1141.

Regardless, Petitioners' rights were violated even under the USPTO's preferred framework. Filing fees are property. The USPTO held out one set of institution standards, took Petitioners' money, then rejected their petitions under a new standard. Respondents deny none of that; they instead attack a "property interest" in "specific institution outcome[s]," which Petitioners do not assert. USPTO Br. 20; Polaris Br. 18 n.7.[2]

Separately, Petitioners had a protected interest in having their petitions adjudicated fairly under the statute and existing standards—as recognized in *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982), which Respondents ignore. Pet. 18. Contrary to Respondents' strawman (USPTO Br. 16-19 & n.3; Polaris Br. 17-18 & n.6), Petitioners are not demanding a particular outcome; they simply want the USPTO not to change the rules mid-game.

---

[2] The USPTO (at 20) distinguishes (non-refundable) "request" and (refundable) "Post-Institution" fees, but Petitioners rely only on the former. Pet. 8.

Petitioners lacked notice and an opportunity to be heard at the relevant time—
"when the deprivation c[ould] still be prevented." *Fuentes v. Shevin*, 407 U.S. 67, 81
(1972); Pet. 18; *contra* USPTO Br. 2. Respondents identify only notice and
opportunity to shout into the void *after* Petitioners paid their fees and the time to
satisfy the USPTO's rule had long passed. USPTO Br. 21; Polaris Br. 20.

3. Polaris defends the USPTO's retroactive actions on several grounds the
USPTO itself declines to advance. *First*, Polaris (at 13) urges rational-basis review.
That confuses retroactive legislation by *Congress* (requiring "strong" deference)
with retroactive regulation by *agencies*. *Compare GPX*, 780 F.3d at 1141 (Congress),
*with Rodriguez*, 511 F.3d at 1153 (agencies). In any event, this retroactive rule *was*
irrational—it applied out of the blue in an "unreasonable" and illogical fashion. Pet.
17, 20. Respondents muster no justification, let alone a rational one.

*Second*, Polaris (at 14) denies that *Princess Cruises* is grounded in due process.
But *Princess Cruises* applied *Landgraf*'s "factors" (*Princess Cruises*, 397 F.3d at 1363-
64)—which rested on "Due Process" (*Landgraf*, 511 U.S. at 266). *Princess Cruises*
did not merely interpret a particular "governing statute" (*contra* Polaris Br. 14); it
"created" a *Landgraf*-based "test" applicable universally. *Rodriguez*, 511 F.3d at
1153.

*Third*, Polaris (at 19-20) maintains the "settled expectations" rule does not necessarily *foreclose* institution for "old" patents. Yet it undisputedly *disfavors* institution and was the sole identified basis for denying institution here. Pet. 11.

*Fourth*, Polaris (at 11-12) says Petitioners forfeited their retroactivity challenge. That accusation (conspicuously *not* advanced by the USPTO) is unfounded. Petitioners' agency briefing (despite space constraints) devoted an entire section to anti-retroactivity, arguing new rules should not apply and urging the USPTO "maintain" the criteria "in place when [the petitions] were filed." Appx223-226; Appx468-471; Appx666-670. Petitioners specifically argued retroactive application is unjustified, prejudicial, and "[un]constitutional." *Id.*

In any event, arguing anti-retroactivity at greater length would have been futile and therefore unnecessary to avoid forfeiture. *See Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 1370 n.5 (Fed. Cir. 2021). Myriad other IPR petitioners have argued that applying new institution standards retroactively is unconstitutional, and the USPTO has never responded. *E.g.*, Opposition to Discretionary Denial 63, *Amgen Inc. v. Bristol-Myers Squibb Co.*, IPR2025-00601, 2025 WL 1911881 (July 10, 2025); *id.*, Decision Denying Institution, 2025 WL 2086050 (July 24, 2025); Opposition to Discretionary Denial 23-32, *NKT Photonics Inc. v. Omni Continuum LLC*, IPR2025-00839, 2025 WL 2350139 (Aug. 13, 2025);

8

*id.*, Decision Denying Institution (Sept. 4, 2025). More briefing here would have changed nothing (as the USPTO itself never contests).

And regardless, this Court should resolve the anti-retroactivity issue. It is purely legal, fully briefed, and significant to agency power and the constitutional rights of countless stakeholders. *See* Pet. 37-38; *infra* 18; *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1040 (Fed. Cir. 2017) (reasons for disregarding forfeiture).

### B. The USPTO's retroactive application of the "settled expectations" rule violated the APA.

The USPTO exceeded its statutory authority and abandoned reasoned decisionmaking in imposing the "settled expectations" rule retroactively. Pet. 18-21. Respondents have no response.

### C. The USPTO's failure to use notice-and-comment rulemaking violated the APA and AIA.

The USPTO defied the requirement of notice-and-comment rulemaking. Pet. 21-25. Respondents, again, have no response.[3]

---

[3] Amicus PTAAARMIGAN (at 11-12) incorrectly posits that the "settled expectations" rule was framed as a policy statement not requiring notice and comment. "Agencies have never been able to avoid notice and comment simply by mislabeling their substantive pronouncements." *Azar v. Allina Health Servs.*, 587 U.S. 566, 575 (2019). An agency pronouncement that "affect[s] subsequent agency acts" and has "a future effect on a party before the agency" is not "a mere policy statement" and "triggers" notice-and-comment obligations. *Sprint Corp. v. FCC*,

On the contrary, the USPTO has doubled down. Since the petition was filed, the agency abandoned one rulemaking and proposed new regulations that still fail to address "settled expectations." 90 Fed. Reg. 48335-48341, 48342 (Oct. 17, 2025) (Appx704-711). Even as the USPTO attempts proper rulemaking for other institution rules (as the APA and AIA require), it does not comply with that obligation here.

### D.   The USPTO exceeded authority by inventing an institution criterion untethered to the AIA.

#### 1.   The USPTO may not invent extra-statutory institution criteria.

The USPTO says "the IPR statute contains no criteria for institution." USPTO Br. 23. That is untrue. Congress crafted a reticulated statutory scheme. Congress instructed the USPTO to consider certain factors (*e.g.*, §§314(a), 315(b), 315(d), 315(e), 325(d)), and it isolated agency discretion to particular areas (*e.g.*, §§315(d), 325(d)). Pet. 26-30. These statutory directives appear in the U.S. Code; they are not optional, and the USPTO cannot ignore them.

---

315 F.3d 369, 373 (D.C. Cir. 2003) (alterations omitted). That describes the "settled expectations" rule: the rule has already led the agency to foreclose IPRs in nearly two hundred cases. Addendum to Amicus Brief of US*MADE et al., *In re Cambridge Indus. USA*, No. 26-101, ECF 10 (Fed. Cir.) ("US*MADE Addendum"). Indeed, PTAAARMIGAN agrees (at 4) the agency treats the rule "as if it were binding."

Respondents identify no statutory text authorizing the USPTO to invent its own institution criteria. The USPTO (at 4, 28-29 & n.4) invokes only §314, which does the *opposite*. Far from conferring power, §314(a) is phrased as a constraint: the Director "may not" institute IPR "unless" §314(a)'s criterion is satisfied.

So the USPTO instead tries the *absence* of statutory text: because Congress never specified when "the Director is *obliged* to institute an IPR," it must have "le[ft]" "deny[ing] institution" to "his discretion." USPTO Br. 30 (emphasis added). This is upside down: "[a]gencies have only those powers given to them by Congress." *West Virginia v. EPA*, 597 U.S. 697, 723 (2022). The burden is not on Congress to specify "limitations" on agency power (*contra* USPTO Br. 27); the agency *lacks* power unless Congress affirmatively grants it. Here, Congress limited the USPTO's discretion to certain provisions (*e.g.*, §§315(d), 325(d)), which authorize denial for particular reasons. There is no universal discretion to invent new criteria and supplant Congress's framework.

Yet the USPTO's reading would indeed rewrite that framework. It essentially concedes (at 28) its reading makes §315(d) and §325(d) superfluous for IPR institution: in its view, those provisions merely "emphasize[]" the Director's overall discretion, reiterating "specific" powers (*id.*) entirely subsumed within that broader discretionary authority. But Congress did not enact §315(d) and §325(d) out of

11

"'inadvertence'" or an attempt to be "'doubly sure.'" *Contra* USPTO Br. 29 n.4. Congress designed from scratch the AIA's comprehensive institution scheme, limiting agency discretion to specified provisions. It is implausible that Congress intended to grant the USPTO unbounded discretion (to craft any institution framework it wished), yet forgot to say so—while articulating a system of narrower, calibrated grants of discretion.

Without any statutory basis for its position, the USPTO (at 27-29) falls back on past judicial statements generally describing its institution authority as discretionary. But as the USPTO ignores, none of those cases involved *Petitioners'* argument (read: the USPTO's institution discretion is limited to the statutory criteria). Pet. 26, 35-36. Agencies are limited to their enumerated powers, and "'enabling legislation' is generally not an 'open book to which the agency [may] add pages and change the plot line.'" *West Virginia*, 597 U.S. at 723. This Court can, and should, analyze and decide this open legal question. *See Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303, 1310, n.1 (Fed. Cir. 2021).

> ### 2.    The "settled expectations" rule exceeds the USPTO's authority and violates the AIA.

Even if the USPTO could invent institution criteria generally, it still could not deny institution based on a patent's age. It is undisputed that the AIA makes patents (even "old" ones) eligible for IPR on equal terms; Congress chose not to disfavor

IPR for any body of patents or impose any artificial deadline measured by a patent's age, even while imposing other time limits. Pet. 30-31; *see Oil States Energy Servs. v. Greene's Energy Grp.*, 584 U.S. 325, 337 (2018) ("Patent claims are granted subject to the qualification that" they may be canceled "in an inter partes review."); *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35 (2017) (rejecting extra-statutory time limit where statute already addressed timeliness). Contrary to the USPTO's view (at 29), no amount of "discretion" can supplant that congressional choice. Agencies lack "power to override Congress." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374-75 (1986).

## II.     The remaining mandamus criteria are satisfied.

### A.     The USPTO's errors are reviewable.

1. Petitioners' constitutional claims are reviewable, notwithstanding §314(d). Respondents concede as much for Petitioners' due-process claim. USPTO Br. 1; Polaris Br. 10.

As for Petitioners' separation-of-powers claims, Respondents insist exceeding authority is a *statutory* error. USPTO Br. 25-26; Polaris Br. 8, 12. But the USPTO arrogated Congress's legislative power. And labels aside, the Supreme Court has confirmed "§314(d) does not 'enable the agency to act outside its statutory limits,'" and such "shenanigans" are reviewable notwithstanding §314(d). *SAS Inst., Inc. v.*

13

*Iancu*, 584 U.S. 357, 371 (2018) (quoting *Cuozzo Speed Techs. v. Lee*, 579 U.S. 261, 275 (2016)).

2. Without contesting the USPTO's APA violations—in promulgating (i) retroactive rules (ii) without notice and comment—Respondents insist those errors are unreviewable. USPTO Br. 12-15; Polaris Br. 7-10. According to Respondents, IPR institution is an APA-free zone. Under that view, the USPTO could disobey obligations that bind every other federal agency, and no court could do anything about it.

That is not the law. There is a "'strong presumption'" that agencies cannot escape judicial review. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020). Under controlling precedent, notwithstanding §314(d), "judicial review remains available consistent with the Administrative Procedure Act," and the USPTO cannot "engage[] in '"shenanigans"'" by exceeding its statutory bounds." *SAS*, 584 U.S. at 371. Universal administrative-procedure requirements are not "matters 'closely tied to the application and interpretation of statutes related to' the institution decision" barred by §314(d). *Thryv, Inc. v. Click-To-Call Techs., LP*, 590 U.S. 45, 53 (2020); *cf. Dickinson v. Zurko*, 527 U.S. 150, 154-55 (1999) (rejecting attempt to exempt USPTO from APA's "uniform approach to judicial review").

14

As a result, as *Apple Inc. v. Vidal* held, §314(d) does not bar notice-and-comment challenges, and the "APA's procedural requirements are enforceable" notwithstanding §314(d). 63 F.4th 1, 14-15 (Fed. Cir. 2023). For the same reason, Petitioners' APA anti-retroactivity challenge is reviewable because it addresses *how* the USPTO (mis)regulated. *See Bowen v. Mich. Acad. of Fam. Physicians*, 476 U.S. 667, 675 (1986) (provision barring review of agency *determinations* does not bar review of agency "*method[s]*").

Respondents invite a false conflict between this Court's decisions and the Supreme Court, which this Court should reject. Contrary to Respondents' argument (USPTO Br. 12-14; Polaris Br. 7-9), *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, did not hold that §314(d) forecloses all statutory claims—it only rejected the claims there for failing to meet the mandamus standard. 989 F.3d 1375, 1382 (Fed. Cir. 2021); Pet. 32, 35-36. Indeed, *Mylan* could not have barred APA notice-and-comment claims, or *Apple* would be wrongly decided.

Respondents try limiting *Apple*'s notice-and-comment holding to "prospective" claims, and insist *Apple* barred any other claim challenging institution guidance. USPTO Br. 13-15; Polaris Br. 8-10. But *Apple*'s §314(d) analysis never mentioned any "prospective" caveat, and *Apple* did not address claims (as here) challenging a decision to implement a new rule retroactively.

15

Respondents' attempts to shrink the Supreme Court's §314(d) decisions also fail. The USPTO (at 13) distinguishes *SAS* because it did not involve mandamus or "review of an institution decision"—facts immaterial to *SAS*'s legal holdings: "§314(d) does not 'enable the agency to act outside its statutory limits,'" and "judicial review remains available consistent with the [APA]." 584 U.S. at 371. Likewise, Polaris (at 7) is wrong that *Cuozzo* precludes "ultra vires or other statutory arguments." *Cuozzo* did the opposite: it declined to "enable the agency to act outside its statutory limits" and preserved APA review. 579 U.S. at 275 (citing 5 U.S.C. §§706(2)(A)-(D)).

3. Similarly, the AIA violations here are reviewable. §314(d) does not bar review when the agency engages in "shenanigans" and "act[s] outside its statutory limits" (*SAS*, 584 U.S. at 371; *Cuozzo*, 579 U.S. at 275; Pet. 34-35), which describes the USPTO's actions here. Pet. 33-34. Nor do Respondents genuinely dispute that Petitioners' attack—challenging power to invent new institution criteria—is a fundamental question outside "'an ordinary dispute about the application of' an institution-related statute." *Thryv*, 590 U.S. at 54; Pet. 34. Nothing in §314(d) precludes this kind of predicate, first-principles review.

Respondents overread *Mylan* and *Apple*. *Supra* 15; Pet. 34-36. Under Respondents' view, the USPTO could treat any statutory institution guardrail as

merely advisory. And Respondents err in suggesting that review is unavailable because institution is discretionary (USPTO Br. 27-28; Polaris Br. 1), because this dispute addresses the antecedent question: whether the agency indeed has the discretion asserted. Pet. 35-36. The Court should reject Respondents' suggestion that the USPTO's interpretation of its own authority on this question is unreviewable.

### B.     Petitioners have no other means of relief.

Respondents do not contest that this Court identifies mandamus as the sole avenue for correcting legal violations in this context. Pet. 36 & n.10. Respondents instead identify other avenues for *different* relief: invalidating patent claims. USPTO Br. 31; Polaris Br. 21. But a party is not disabled from challenging *specific lawlessness in specific proceedings* just because different claims can be raised elsewhere. Under Respondents' position, mandamus would *never* be available for *any* IPR-related claim, because patent validity can be challenged elsewhere. *Contra Mylan*, 989 F.3d at 1381. Petitioners are challenging the errors and abuse of their filing fees in *these* proceedings, so only judicial review here can correct those errors.[4]

---

[4] For similar reasons, PTAAARMIGAN errs in contending (at 15) that Petitioners must show a right to institution. Petitioners assert the right for the agency to follow legal rules in adjudicating its IPR petitions. A party need not show a right to ultimate victory to assert a right not to have an agency draw straws to decide who wins.

### C.    Mandamus is appropriate.

Mandamus is warranted to constrain the USPTO to follow the law on these important issues. Respondents resist judicial scrutiny by arguing that "current USPTO leadership" should be able to freely implement its "own policy judgments." USPTO Br. 32-33; *see* Polaris Br. 22-23. That only underscores the need for judicial review. There is no free rein for new appointees to pull the rug from parties who detrimentally relied on prior agency pronouncements, or to implement policy judgments that contradict the statute. Wielding agency power without legal constraint may be "efficient[]" (Polaris Br. 22-23), but judicial review exists to hold agencies to their constitutional and statutory obligations.

This Court's intervention is desperately needed. The "settled expectations" rule has upended IPR. Pet. 3-4, 37-38. This case's importance is only accelerating. The USPTO has now deployed the "settled expectations" rule to deny institution in nearly 200 cases (and counting). *See* US*MADE Addendum. Two former USPTO Directors have authored briefs explaining the "settled expectations" rule is unlawful. *Id.*; Amicus Brief of Public Interest Patent Law Institute, *Cambridge*, *supra*, ECF 14-2.

And judicial review of "settled expectations" may be now or never. The USPTO just announced it will no longer explain institution decisions. Appx713

18

(Memorandum from USPTO Director to PTAB, *Director Institution of AIA Trial Proceedings* (Oct. 17, 2025) (Appx712-713)) (only "summary notice[s]" absent "novel or important" issues). So when the "settled expectations" rule is applied in future cases, parties and this Court may not even know. But here, the rule was applied clearly, singularly, and dispositively. This Court should review the "settled expectations" rule and require compliance with the Constitution, the APA, and the AIA.

## CONCLUSION

The Court should grant the full relief requested in the petition.

Dated: October 30, 2025

Respectfully submitted,

**HAYNES AND BOONE, LLP**

*/s/ Debra J. McComas*

Debra J. McComas
Daniel L. Geyser
Michael Qian
2801 N. Harwood St., Suite 2300
Dallas, TX 75201
Phone: (214) 651-5375
*Debbie.McComas@haynesboone.com*
*Daniel.Geyser@haynesboone.com*
*Michael.Qian@haynesboone.com*

Angela M. Oliver
888 16th Street NW, Suite 300
Washington, DC 20006
Phone: (202) 654-4552
*Angela.Oliver@haynesboone.com*

**Attorneys for Petitioners Sandisk
Technologies, Inc. and Western
Digital Technologies, Inc.**

## CERTIFICATE OF COMPLIANCE

1.      This reply complies with the type-volume limitation of Fed. Cir. R. 21(b) because:

■      this petition contains **3,900** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

2.      This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because:

■      this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Equity A font.

*/s/ Debra J. McComas*
Debra J. McComas