**2025-152**

# United States Court of Appeals
# for the Federal Circuit

In re: SANDISK TECHNOLOGIES, INC., WESTERN DIGITAL
TECHNOLOGIES, INC.,

*Petitioners.*

---

*On Petition for a Writ of Mandamus to the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2025-00515, IPR2025-00516 & IPR2025-00517*

---

## BRIEF FOR *AMICUS CURIAE* INTELLECTUAL PROPERTY AND INNOVATION PROFESSORS IN SUPPORT OF PETITIONERS

MARK A. LEMLEY
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605
mlemley@law.stanford.edu

*Counsel for Amicus Curiae*

SEPTEMBER 22, 2025

CP COUNSEL PRESS    (800) 4-APPEAL • (715138)

FORM 9. Certificate of Interest

Form 9 (p. 1)<br>March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  25-152

**Short Case Caption**  In re Sandisk Technologies, Inc.

**Filing Party/Entity**  Intellectual Property and Innovation Professors

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/22/2025

Signature:  /s/ Mark A. Lemley

Name:  Mark A. Lemley

**FORM 9. Certificate of Interest**                                        Form 9 (p. 2)
                                                                            March 2023

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| See Appendix A | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☐ No   ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable          ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

## Appendix A

## List of Signatories[1]

Professor Jeremy W. Bock
Tulane University Law School

Professor Zachary L. Catanzaro
Widener University Delaware Law

Professor Bernard Chao
University of Denver Sturm College of Law

Professor Colleen Chien
Berkeley Law School

Professor Jorge Contreras
University of Utah College of Law

Professor Nikola L. Datzov
University of North Dakota School of Law

Professor Rochelle Dreyfuss
NYU School of Law

Professor Roger Allan Ford
University of New Hampshire Franklin Pierce School of Law

Professor Paul Gugliuzza
University of Texas School of Law

Professor Mark D. Janis
Indiana University School of Law

Professor Aaron Kesselheim
Harvard Medical School

---

[1]  The undersigned have joined the brief in their personal capacity. Institutions are listed for identification purposes only.

Professor Sapna Kumar
University of Minnesota Law School

Professor Amy Landers
Drexel University Thomas R. Kline School of Law

Professor Mark A. Lemley
Stanford Law School

Professor Jack Lerner
University of California, Irvine School of Law

Professor Doug Lichtman
UCLA School of Law

Professor Yvette Joy Liebesman
St. Louis University School of Law

Professor Brian J. Love
Santa Clara University School of Law

Professor Phil Malone
Stanford Law School

Professor Susan Barbieri Montgomery
Northeastern University School of Law

Professor David Stein
Vanderbilt Law School

Professor John Thomas
Georgetown University Law Center

Professor S. Sean Tu
University of Alabama School of Law


Professor Liza Vertinsky
University of Maryland Francis King Carey School of Law

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTEREST OF AMICI.......................................................................................1

ARGUMENT .....................................................................................................2

    I.     The Interim Director Has Created a New Policy That
          Insulates the Vast Majority of Patents from Any IPR Review .............2

    II.    The Settled Expectations Policy Violates the Statute and
         Undermines the Whole Purpose of IPRs.................................................5

    III.   The Interim Director's Actions Reflect Her Disagreement
         with the Statute Rather than a Good-Faith Effort to Apply
         That Statute..............................................................................................8

    IV.   The Issue Is Important and Recurring, and Mandamus Is the
         Only Vehicle to Correct It ....................................................................10

CONCLUSION .................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Amgen Inc. v. Bristol-Myers Squibb Company*,
  IPR2025-00603 (PTAB Jul. 24, 2025) ...............................................................3

*Cuozzo Speed Techs. v. Commerce for Intell. Prop.*,
  579 U.S. 261 (2016) ........................................................................................8

*Dabico Airport Sols. Inc. v. AXA Power ApS,*
  IPR2025-00408 (Director Jun. 18, 2025) ..........................................................3

*iRhythm Technologies, Inc. v. Welch Allyn*,
  IPR2025-00363 (PTAB Jun. 6, 2025) ................................................................2

*Kahoot! AS v. Interstellar, Inc.*,
  IPR2025-00696 (Director Rev. Dec. Jul. 31, 2025) ..........................................3

*SAS Inst., Inc. v. Iancu*,
  584 U.S. 357 (2018) ........................................................................................8

*SCA Hygiene Prods. Ag v. First Quality Baby Prods., LLC*,
  580 U.S. 328 (2017) ........................................................................................6

*SMC Ltd. v. AICP LLC*,
  IPR2025-00682 ................................................................................................5

*Yangtze Memory Tech Co., Ltd. v. Micron Tech., Inc.*,
  IPR2025-00501 ................................................................................................3

**Statutes & Other Authorities:**

35 U.S.C. § 311(c)(1) ...........................................................................................4, 5

35 U.S.C. § 314 .......................................................................................................10

35 U.S.C. § 315(b) ...................................................................................................6

Brian J. Love, *An Empirical Study of Patent Litigation Timing: Could a Patent Term Reduction Decimate Trolls Without Harming Innovators?*,
  161 U. Pa. L. Rev. 1309 (2013) ......................................................................4

John R. Allison, Mark A. Lemley & David L. Schwartz, *Understanding the Realities of Modern Patent Litigation*, 92 Tex. L. Rev. 1769 (2014) ................ 7-8

Joseph Farrell & Robert P. Merges, *Incentives to Challenge and Defend Patents: Why Litigation Won't Reliably Fix Patent Office Errors and Why Administrative Patent Review M*ight Help,
19 Berkeley Tech. L.J. 943 (2004) ........................................................................7

Mark A. Lemley, *Rational Ignorance at the Patent Office*,
95 Nw. U. L. Rev. 1495 (2001) ........................................................................7

Melissa Ritti, *Acting USPTO director talks settled expectations, end of remote work, and more* ........................................................................9

Paul R. Gugliuzza, Our _____ Patent System 43 (Aug. 20, 2025) ........................9

**INTEREST OF AMICI**

Amici teach and write about intellectual property law and innovation at universities throughout the United States. We believe the petition presents important and unresolved legal issues and that the perspective of legal scholars will help the Court in adjudicating those issues. We have no client or economic interest in the outcome of this case, but have a personal and professional interest in the proper development of patent law and policy.[1] A list of signatory amici is attached as Appendix A.

Both petitioners and the USPTO have consented to the filing of this brief.

---

[1] No one other than the undersigned has authored or paid for any part of this brief.

## ARGUMENT

Mandamus is appropriate in this case. The interim Director of the PTO has rejected hundreds of meritorious IPR petitions in the last eight months. Those rejections are based on a policy of protecting the "settled expectations" of patent owners that their patents will not be invalidated when those patents have been in force as little as two years. That policy violates the statute and contravenes the policies that underly the IPR proceeding. This case, and hundreds more like it, reflect not the exercise of judgment and discretion as to the merits of the case before the interim Director or the need to make efficient use of PTO resources, but instead her expressed hostility to the entire project of IPRs. Rejecting meritorious petitions because you don't personally like the law under which they are filed is just the sort of "shenanigans" the Supreme Court and this Court have said should be reviewable.

## I.     The Interim Director Has Created a New Policy That Insulates the Vast Majority of Patents from Any IPR Review

The interim PTO Director began rejecting meritorious IPR petitions in early 2025 on the theory that the patent owner had a "settled expectation" that their patent wouldn't be challenged. *See, e.g., iRhythm Technologies, Inc. v. Welch Allyn*, IPR2025-00363, -00374, -00376, -00377, -00378, Paper 10 (PTAB Jun. 6, 2025). So far she has issued nearly four hundred denials retroactively applying her new rules, including 147 denials applying the settled expectations doctrine.

2

That settled expectation doctrine is not based on an analogy to laches or estoppel. Asserting settled expectations does not depend on any proof that the patentee had previously asserted the patent or engaged in licensing negotiations or that the challenger was aware of the patent. *See, e.g., Dabico Airport Sols. Inc. v. AXA Power ApS,* IPR2025-00408, Paper 21 at 2-3 (Director Jun. 18, 2025). Indeed, the interim Director will apply the doctrine if the patentee hasn't argued or asked for it. *Id*.

The interim Director has said that six years is enough to "create strong settled expectations", *See Kahoot! AS v. Interstellar, Inc.*, IPR2025-00696, Paper 12 at 2 (Director Rev. Dec. Jul. 31, 2025) (determining that a six-year post-issuance time frame is sufficient to "creat[e] strong settled expectations"). But she has also found settled expectations for patents that had been in force for less than six years, *see*, *Kahoot! AS v. Interstellar, Inc.,* IPR2025-00696, Paper 9 at 5-6; Paper 12; *Yangtze Memory Tech Co., Ltd. v. Micron Tech., Inc.,* IPR2025-00501, Papers 8, 10. and has suggested that a patent in force for as little as two years may have such expectations. *Amgen Inc. v. Bristol-Myers Squibb Company*, IPR2025-00603, Paper 8 (PTAB Jul. 24, 2025) (denying institution for patents that had been in force for six or more years; allowing an IPR for a patent that issued in 2022 but noting that even such a young patent might have settled expectations based on

3

"investment, time, and resources dedicated to research, development, trials, and regulatory approval").

The patent term is more than twenty years on average. The vast majority of patents are older than six years (or younger than nine months)[2] and so would not be subject to IPRs under even the narrowest reading of the interim Director's new policy. That is even more true of the patents for which IPR is most needed – those purchased and asserted by patent assertion entities (PAEs) or patent trolls. Empirical evidence shows that PAEs overwhelmingly bring suit late in the patent's life, often in the final three years of a patent's term. Brian J. Love, *An Empirical Study of Patent Litigation Timing: Could a Patent Term Reduction Decimate Trolls Without Harming Innovators?*, 161 U. Pa. L. Rev. 1309 (2013) ("NPEs—specifically those NPEs most associated with litigation abuse—are responsible for an enormous fraction of infringement claims [92%] brought late in the patent term, precisely when litigation seems most abusive"). Because those patents have a different owner than they did when they were issued, there would be no reason for a challenger to bring an IPR action against them during the first few years of life. But the fact that the patent lay dormant for years does not defeat the "settled

---

[2] The statute bars bringing an IPR proceeding during the first nine months of a patent's term. 35 U.S.C. §311(c)(1).

expectations" argument. *SMC Ltd. v. AICP LLC*, IPR2025-00682, Paper 10 at 40-42; Paper 17.

The practical effect of the interim Director's new policy has been dramatic, including not only hundreds of discretionary denials but changes in the way the PTAB itself evaluates cases. The result is that, "for IPR petitions filed since October 1, 2024, 72% have been denied while IPR petitions filed between January and August of that same year enjoyed a 61% institution rate."

https://www.mintz.com/insights-center/viewpoints/2231/2025-08-28-ptab-pendulum-swings-how-ipr-denials-are-reshaping. The interim Director is using her "discretion" to fundamentally reorder the IPR process, making it inaccessible outright in a substantial majority of cases.

## II.     The Settled Expectations Policy Violates the Statute and Undermines the Whole Purpose of IPRs

The interim Director's new settled expectations policy is inconsistent with the statute. Congress knew how to write time limits into the IPR system. They did so twice. First, they precluded filing an IPR in the first nine months after a patent issued. 35 U.S.C. §311(c)(1).[3] Second, they precluded filing an IPR if the patentee waited "more than 1 year after the date on which the petitioner . . . is served with a

---

[3] Notably, that provision, which *requires* the petitioner to delay filing, seems inconsistent with a policy that any delay in filing is improper.

complaint alleging infringement of the patent." 35 U.S.C. § 315(b). Those statutes do not leave room for the interim Director to create an entirely new time limit, particularly one that eliminates the overwhelming majority of petitions the statute permits. As the Supreme Court said in rejecting the analogous defense of laches in litigation,

> Laches provides a shield against untimely claims, and statutes of limitations serve a similar function. When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief. The enactment of a statute of limitations necessarily reflects a congressional decision that the timeliness of covered claims is better judged on the basis of a generally hard and fast rule rather than the sort of case-specific judicial determination that occurs when a laches defense is asserted. . . . As we stressed in *Petrella,* "courts are not at liberty to jettison Congress' judgment on the timeliness of suit."

*SCA Hygiene Prods. Ag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 334-35 (2017). There is no reason to give the interim Director more power than courts have, particularly when, as here, none of the equitable factors that would support laches or estoppel are required to show settled expectations.

The settled expectations policy also flies in the face of the purpose of the IPR regime. The entire purpose of the IPR procedure is to give the PTO an opportunity to review patents later in life once it has become clear that the validity of the patent is important. The PTO of necessity gives only a somewhat cursory review of patent applications before issuing patents. Examination is ex parte, and examiners spend only 18 hours on average on an application over a period of three

years. *See* Mark A. Lemley, *Rational Ignorance at the Patent Office*, 95 Nw. U. L. Rev. 1495, 1499-1500 (2001). With more than 600,000 patent applications filed every year, it can't do more. And we don't want it to. Because the validity of most of those patents doesn't matter, the benefit of administrative revocation schemes like IPRs is precisely that they allow the PTO to concentrate its resources on the patents that matter, particularly those later asserted in litigation. *Id*.; Joseph Farrell & Robert P. Merges, *Incentives to Challenge and Defend Patents: Why Litigation Won't Reliably Fix Patent Office Errors and Why Administrative Patent Review Might Help*, 19 Berkeley Tech. L.J. 943 (2004).

A patent owner should not have "settled expectations" that a patent they obtained only a few years before can never be challenged. The entire system is set up with the idea that if and when the patentee asserts the patent, its validity can be evaluated in detail. And while that remains possible in court, the purpose of the IPR system is to provide a quicker and cheaper way to engage in that detailed evaluation. It has been a resounding success at that, delivering results that are essentially identical to courts in invalidation rate,[4] but doing so more quickly and at

---

[4]  Since the beginning of the IPR process challengers have won in whole or in part 5,181 out of 11,511 completed proceedings, or 45.0%. If we exclude patents that are partially upheld (which is arguably a patent owner rather than a challenger win) challengers win 4,234 out of 10,564 cases, or 40.1%. Data calculated from law.lexmachina.com/ptab/ on September 20, 2025. Those numbers are essentially indistinguishable from the invalidity rate in court, which is 42.4%. John R. Allison, Mark A. Lemley & David L. Schwartz, *Understanding the Realities of Modern*

less than 20% of the cost of litigation. The interim Director's policy undoes the very purpose of the IPR.

It would, of course, be possible to design a different system, one that subjects all patent applications to searching review at the outset, actively solicits the participation of outsiders, and gives the patentee rights that cannot be challenged. But that is not the system we have. No patent owner has a settled expectation that administrative revocation proceedings that have been around in some form or another since 1980 will not be applied to their patent.

### III.    The Interim Director's Actions Reflect Her Disagreement with the Statute Rather than a Good-Faith Effort to Apply That Statute

The risk that a PTO director would go rogue like this and use the discretion the statute vests in them to undermine the law altogether is precisely why the Supreme Court kept a safety valve in place to address such dereliction of duty. *See SAS Inst., Inc. v. Iancu*, 584 U.S. 357, 371 (2018) (allowing judicial review of institution decisions under the Administrative Procedures Act and to challenge "shenanigans"); *Cuozzo Speed Techs. v. Commerce for Intell. Prop.*, 579 U.S. 261, 275 (2016).

---

*Patent Litigation*, 92 Tex. L. Rev. 1769 (2014) (finding 42.4% invalidity rates in cases decided 2009-2013).

The interim Director's new policy does not reflect a case-by-case exercise of discretion on the facts of each case. Rather, it is a policy that reflects her opposition to the very idea of IPRs and administrative revocation. As she said this month in a speech to Intellectual Property Owners:

> Imagine if your law license, your business license, your college degree, the title to your home or your ability to drive were constantly subjected to reconsideration by anyone at any time, year after year after year. And that you had no presumption that the original decision was correct, and no window of time that closes to stop these challenges. It's hard to think of a single example in all of government where such a system exists. And ***such a system is completely contrary to the exclusive right granted to patent owners in the Constitution, the presumption of validity granted by Congress and the Article III court protections afforded to patent owners prior to the AIA***.

> To have a stable economy we need a stable patent system. Repeated and expedited reconsideration of patent grants under the low preponderance of evidence standard is the antithesis of stability.

Melissa Ritti, *Acting USPTO director talks settled expectations, end of remote work, and more*, https://www.mlex.com/mlex/intellectual-property/articles/2385054/acting-uspto-director-talks-settled-expectations-end-of-remote-work-and-more. (emphasis added).

That statement reflects a flat-out rejection of the entire policy of IPRs as established in the America Invents Act. *See generally* Paul R. Gugliuzza, Our _____ Patent System 43 (Aug. 20, 2025), https://ssrn.com/abstract=5399385. It is fine for someone – even someone in a position of authority – to disagree with

Congress's judgment and wish the law had been written differently. It is not fine to seek to supplant Congressional mandate by adopting her own policy, as the interim Director has done. "Shenanigans" indeed.

### IV.    The Issue Is Important and Recurring, and Mandamus Is the Only Vehicle to Correct It

The issue is extremely important. The interim Director has issued hundreds of discretionary denials pursuant to an illegal policy. Those decisions are "final and unappealable." 35 U.S.C. §314. Mandamus is the only available vehicle to correct it.

There are several mandamus petitions pending that present nearly identical challenges. It may be appropriate for this Court to consolidate those challenges and hold a full hearing rather than ruling on each seriatim. If it does so, I encourage the Court to seek the views of amici. The four-day window for amicus briefs makes it virtually impossible for the Court to receive the views of various parties on this important issue.

## CONCLUSION

The Court should grant the writ of mandamus.

Respectfully submitted,

*/s/ Mark A. Lemley*
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605
mlemley@law.stanford.edu

*Counsel for Amicus Curiae*

11

## Appendix A

## List of Signatories[5]

Professor Jeremy W. Bock
Tulane University Law School

Professor Zachary L. Catanzaro
Widener University Delaware Law

Professor Bernard Chao
University of Denver Sturm College of Law

Professor Colleen Chien
Berkeley Law School

Professor Jorge Contreras
University of Utah College of Law

Professor Nikola L. Datzov
University of North Dakota School of Law

Professor Rochelle Dreyfuss
NYU School of Law

Professor Roger Allan Ford
University of New Hampshire Franklin Pierce School of Law

Professor Paul Gugliuzza
University of Texas School of Law

Professor Mark D. Janis
Indiana University School of Law

Professor Aaron Kesselheim
Harvard Medical School

---

[5] The undersigned have joined the brief in their personal capacity. Institutions are listed for identification purposes only.

Professor Sapna Kumar
University of Minnesota Law School

Professor Amy Landers
Drexel University Thomas R. Kline School of Law

Professor Mark A. Lemley
Stanford Law School

Professor Jack Lerner
University of California, Irvine School of Law

Professor Doug Lichtman
UCLA School of Law

Professor Yvette Joy Liebesman
St. Louis University School of Law

Professor Brian J. Love
Santa Clara University School of Law

Professor Phil Malone
Stanford Law School

Professor Susan Barbieri Montgomery
Northeastern University School of Law

Professor David Stein
Vanderbilt Law School

Professor John Thomas
Georgetown University Law Center

Professor S. Sean Tu
University of Alabama School of Law

Professor Liza Vertinsky
University of Maryland Francis King Carey School of Law

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2025-152

**Short Case Caption:** In re: SanDisk Technologies, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>2,510</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>09/22/2025</u>

Signature: <u>/s/ Mark A. Lemley</u>

Name: <u>Mark A. Lemley</u>