No. 25-152

# United States Court of Appeals
# for the Federal Circuit

———— ❖ ————

IN RE: SANDISK TECHNOLOGIES, INC., WESTERN DIGITAL
TECHNOLOGIES, INC.,

*Petitioner*

On Petition for a Writ of Mandamus
to the United States Patent and Trademark Office, Patent Trial and Appeal Board
in Nos. IPR2025-00515, IPR2025-00516 and IPR2025-00517

**Brief of *Amicus Curiae* PTAAARMIGAN LLC
Supporting Denial of Mandamus but Urging Treatment as a
Notice of Appeal and Supporting Reversal**

———— ❖ ————

October 15, 2025

DAVID E. BOUNDY

PIERSON FERDINAND LLC
P.O. BOX 590638
NEWTON, MA  02459
(646) 472 9737
David.Boundy@PierFerd.com

For *Amicus Curiae*
   PTAAARMIGAN LLC

# CERTIFICATE OF INTEREST

Counsel for *amicus curiae* certifies the following:

1.  The full name of every party or *amicus* represented by me is PTAAARMIGAN LLC.

2.  The names of the real parties in interest represented by me as *amici* are as named in 1.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the *amici* represented by me are: None

4.  The names of all law firms, partners, and associates that have appeared for the party or *amici* now represented by me in the trial court or agency or are expected to appear in this court are: David E. Boundy, Pierson Ferdinand LLC.

5.  Related Cases, Fed. Cir. R. 47.4(a)(5) and 47.5(b): None.

    Though not "related" under the definition of Fed. Cir. R. 47.4(a), *Apple, Inc. et al. v. Squires*, Appeal No. 24-1864 (Nov. 4, 2024), *In re SAP America*, No. 25-132 (Jun. 13, 2025), and *In re Motorola Solutions Inc.*, 25-134 (Jun. 23, 2025), present related subject matter.

6.  This is neither a criminal case with organizational victims, nor a bankruptcy.

Date: October 15, 2025          /s/ David E. Boundy

                                David E. Boundy
                                *Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS ...........................................................................ii

TABLE OF AUTHORITIES .....................................................................iii

IDENTITY AND INTEREST OF AMICUS CURIAE ...........................vi

STATEMENT UNDER FRAP 29(a)(4)(E) ............................................vi

ARGUMENT ...............................................................................................1

    I. Background .....................................................................................6

        A. The role of guidance, including agency decisions .......................6

        B. History of the PTO's institution guidance ................................8

        C. Sandisk's IPR proceedings .......................................................9

    II. The "settled expectations" rule is a "general statement of policy," not a "legislative" rule .......................................................11

    III. Mandamus is unavailable; the Court should treat the petition as a notice of appeal ........................................................13

        A. The "shenanigans" in this case are appealable........................13

        B. Sandisk's issues lack mandamus jurisdiction...........................15

        C. This Court's *Apple v. Vidal* and *In re Palo Alto Networks* do not bar this appeal ...............................................................17

    IV. As applied, Sandisk's decisions are arbitrary, capricious, and in excess of statutory authority, in a *Bowen*/shenanigans appeal ....19

    V. The Stewart memo is part of a pattern of bypassing required rulemaking procedure ................................................................22

    VI. Conclusion ...................................................................................23

CERTIFICATE OF COMPLIANCE........................................................24

# TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Alabama Power Co. v. F.E.R.C.*, 160 F.3d 7 (D.C. Cir. 1998)..................7

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11
(PTAB Mar. 20, 2020) ................................................ passim

*Apple, Inc. v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) ............................... 17, 18

*Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017) ....................7

*Arc Bridges, Inc. v. NLRB*, 861 F.3d 193 (D.C. Cir. 2017) ................5, 21

*Association of Flight Attendants-CWA, AFL-CIO v. Huerta*,
785 F.3d 710 (D.C. Cir. 2015) ........................................... 4, 6

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ........... 16

*Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 218 (1988)...........6

*Bowen v. Michigan Academy of Family Physicians*,
476 U.S. 667 (1986) ................................................... passim

*Chrysler Corp. v. Brown*, 441 U.S. 281 (1979) ........................................7

*Community Nutrition Institute v. Young*,
818 F.2d 943 (D.C. Cir. 1987) ......................................... 3, 11

*Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261 (2016)........ passim

*Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408,
Paper 21 (Director Jun. 18, 2025) ............................... 4, 9, 10

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .................................................8

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ....................21

*General Plastic Industrial Co., Ltd. v. Canon Kabushiki Kaisha*,
IPR2016-01357 (Paper 19) (PTAB. Sept. 6, 2017) ................3

*In re Palo Alto Networks*, 44 F.4th 1369 (Fed. Cir. 2022)................ 17, 18

*In re Rockwell Med. Techs., Inc.*, 239 Fed. Appx. 583 (Fed. Cir. 2007) .... 1

*Leopold v. Manger*, 102 F.4th 491 (D.C. Cir. 2024) ......................... 15, 18

*Lindahl v. Office of Personnel Management*,
    470 U.S. 768 (1985) ................................................... 13, 14, 17

*Metro. Area EMS Authority v. Sec'y of Veterans Affairs*,
    122 F.4th 1339 (Fed. Cir. 2024)..................................... 20, 21

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State
    Farm Mutual Automobile Ins. Co.*,
    463 U.S. 29 (1983) .......................................................... passim

*National Mining Ass'n v. McCarthy*,
    758 F.3d 243 (D.C. Cir. 2014) ...................................... passim

*NHK Spring Co. v. Intri-Plex Technologies, Inc.*,
    IPR2018-00752, Paper 9 (PTAB Sept. 12, 2018) ............. 8, 11

*Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*,
    896 F.3d 1322 (Fed. Cir. 2018).................................. 8, 15, 16

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947)........................... 20

## Statutes

5 U.S.C. § 552 .............................................................. 9, 10, 21

5 U.S.C. § 553 ............................................................... 3, 6, 16

5 U.S.C. § 559 ...................................................................... 8

5 U.S.C. § 702 .................................................................... 13

5 U.S.C. § 706 ............................................................... passim

35 U.S.C. § 314 ............................................................ passim

35 U.S.C. § 316 ............................................................ passim

Paperwork Reduction Act, 44 U.S.C. § 3501 *et. seq.*.................................21

44 U.S.C. § 3507 ................................................................................21


**Regulations**

5 C.F.R. § 1320.10 (information collection regulations implementing
the Paperwork Reduction Act)..............................................................25


**Other Authorities**

Administrative Conference of the United States, Recommendation
2017-5, Agency Guidance Through Policy Statements,
https://www.acus.gov/recommendation/agency-guidance-through-
policy-statements, *reprinted* 82 Fed. Reg. 61,734
(Dec. 29, 2017).......................................................................................6

*Apple, Inc. v. Squires*, Appeal 24-1864, corrected brief of *amicus*
PTAAARMIGAN, ECF 57 (Nov. 4, 2024) ...........................................22

David Boundy, *Agency Bad Guidance Practices at the Patent and
Trademark Office: a Billion Dollar Problem*, 2018 PATENTLY-O L.J.
20 (2018), *available at* https://ssrn.com/abstract=3258040. ...............22

David Boundy, *The PTAB is Not an Article III Court, Part 3:
Precedential and Informative Opinions*, 47 AIPLA Q. J. 1 (Jun.
2019). A director's cut updated to reflect subsequent cases is at
http://ssrn.com/abstract=3258694. ......................................................12

EXECUTIVE OFFICE OF THE PRESIDENT, FINAL BULLETIN FOR AGENCY
GOOD GUIDANCE PRACTICES, OMB BULLETIN 07-02 (Jan. 18, 2007),
*available at* https://www.whitehouse.gov/wp-
content/uploads/legacy_drupal_files/omb/memoranda/2007/m07-
07.pdf, *reprinted in* 72 Fed. Reg. 3432-40 (Jan. 25, 2007) ...................6

## IDENTITY AND INTEREST OF AMICUS CURIAE

PTAAARMIGAN LLC (Patent and Trademark Attorneys, Agents, and Applicants for Restoration and Maintenance of Integrity in Government) advocates on behalf of intellectual property attorneys, agents, and owners, and on behalf of IP-owning clients. PTAAARMIGAN focuses on issues where the substantive or procedural law provides protections against agency overreach, and a federal agency acts in contravention of that law.

This brief brings a view of administrative law that may be helpful to the Court. This brief provides a middle-ground viewpoint that is unlikely to be presented by any of the parties.

## STATEMENT UNDER FRAP 29(a)(4)(E)

No party or party's counsel authored this brief in whole or in part.

No party or party's counsel contributed money that was intended to fund preparing or submitting this brief.

No person, other than *amici*, their members, and counsel, contributed money intended to fund preparing or submitting this brief.

PTAAARMIGAN requested consent from counsel for Sandisk, the Director of the Patent and Trademark Office, and respondent Polaris

PowerLED Technologies, LLC. All three responded to indicate no objection.

# ARGUMENT

Although Sandisk identifies substantial and severe breaches of the law, mandamus is the wrong vehicle. The Court should follow the roadmap laid out by Supreme Court decisions on reviewability:

- As demonstrated in § III.B, institution unlawfully denied is essentially never reviewable by mandamus. Sandisk's petition should be treated as a notice of appeal. *E.g.*, *In re Rockwell Med. Techs., Inc.*, 239 Fed. Appx. 583, 584 (Fed. Cir. 2007).

- Preclusion statutes like § 314(d) should be read narrowly, as directed by the Supreme Court. "[C]hallenges mounted against the *method* by which [determinations are made] rather than the *determinations* themselves" are reviewable. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 675 (1986) (emphasis in original). *Cuozzo Speed Technologies, LLC v. Lee*, 579 U.S. 261, 273 (2016) reaffirmed the "strong presumption" of judicial review. The "settled expectations" rule is reviewable on the terms explained in § III.C.

- As-applied violations of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A)-(D), should be set aside. *Cuozzo*, 579 U.S. at

276; *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 48-49 (1983) ("*State Farm*") (when an agency fails to "cogently explain," its action is "arbitrary and capricious"). The settled expectations rule presents "shenanigans" reviewable as underlying "method," reviewable under *Bowen* and *Cuozzo*. *See* § IV, *infra*.

- On remand, the Director should redetermine institution by (i) treating guidance as nonbinding, and (ii) providing a *State Farm* explanation that considers all relevant § 316(b) considerations, and addresses all relevant arguments.

The APA violations here are serious and outcome-determinative. They are part of a decades-long pattern of United States Patent and Trademark Office ("PTO") departures from legal requirements for rulemaking and are a direct affront to Congress' IPR/PGR statutory scheme. Both Sandisk's case and the public interest warrant correcting the error here.

However, Sandisk frames the case incorrectly and overreaches: the Court can grant relief on narrower, established grounds. Contrary to Sandisk's argument, agencies are *encouraged* to issue nonbinding guidance (without notice-and-comment) to inform the public of the

agency's future intentions and tentative thinking. Guidance that leaves individual decision-makers free to exercise informed discretion (typically by using soft-edged, discretionary, or factor-weighing language) is classified as "general statement of policy" under § 553(b)(A), and properly issued without notice-and-comment. *Community Nutrition Institute v. Young*, 818 F.2d 943, 946 (D.C. Cir. 1987). General statements of policy are typically not treated as final agency action and therefore not facially reviewable. *National Mining Ass'n v. McCarthy*, 758 F.3d 243, 247, 253 (D.C. Cir. 2014). They become reviewable *when applied. Id.*

The Stewart memo, *Interim Processes for PTAB Workload Management* (Mar. 26, 2025) (Appx61-63), *as written*, is just a call for briefing. It purports to supplement *Fintiv*, *General Plastics*, and the like, which are themselves written as "factor weighing," "holistic" policy statements. There's no violation *per se* in issuing such guidance without notice-and-comment.

However, Sandisk should be granted relief. The *quid pro quo* for promulgating a rule without "regulation" procedure (35 U.S.C. § 316(a)) is that the agency must treat guidance **as** guidance: advisory, not binding. When an agency observes full-dress rulemaking, the agency

can explain itself once and be done. In contrast, when an agency has only guidance, when a party disagrees and provides a well-founded alternative view, the agency cannot stand on the guidance, but must instead genuinely entertain that view, and provide a non-arbitrary, non-capricious explanation. *Nat'l Mining*, 758 F.3d at 253 ("When the agency applies [a general statement of] policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.").

The then-Acting Director's decisions present *as-applied* violations of the APA. (a) None of the documents that state the "settled expectations rule"—the then-Acting Director's decision, the Stewart memo, and *Dabico Airport Sols. Inc. v. AXA Power ApS*, IPR2025-00408, Paper 21 (Director Jun. 18, 2025)—connect the "settled expectations" rule to statutory authority (Appx61-67), *contra State Farm*, 463 U.S. at 43 (agency must consider "relevant factors"). (b) The then-Acting Director's decision treats guidance as if it were binding (Appx2), *contra Association of Flight Attendants-CWA, AFL-CIO v. Huerta*, 785 F.3d 710, 717 (D.C. Cir. 2015) ("'Policy statements' are binding on neither the public nor the agency"). (c) The then-Acting Director's decision gives no explanation other than a terse cite to

— 4 —

guidance, and no response to Sandisk's arguments. *Contrast* Appx2 *against* Appx211-26, Appx241-43, *Nat'l Mining*, 758 F.3d at 253, *and Arc Bridges, Inc. v. NLRB*, 861 F.3d 193, 197-200 (D.C. Cir. 2017) (reversing agency decision when agency failed to explain why facially-plausible explanations were rejected). These errors in the then-Acting Director's decision (Appx2) *as-applied* present appealable *Cuozzo* "shenanigans": "arbitrary and capricious," "not in accordance with law," "in excess of statutory jurisdiction," and "without observance of procedure required by law," reviewable by appeal.

In the interest of justice (for reasons explained in §§ III.B and III.C below), Sandisk's petition should be treated as a notice of appeal for an *as-applied* appeal of "shenanigans" in the three decisions, the "*method* by which [determinations are made]." *Cuozzo*, 579 U.S. at 276; *Bowen*, 476 U.S. at 675. The "settled expectations" rule should be reviewed on the same footing as any other guidance, and set aside under § 706(2)(A)-(D).

# I.  Background

## A.  The role of guidance, including agency decisions

Agencies are *encouraged* to issue non-binding "general statements of policy" to give advance notice of the agency's thought process—as long as the agency thereafter *treats* them as non-binding.[1] *Flight Attendants*, 785 F.3d at 716 ("Policy statements are binding on neither the public nor the agency," cleaned up).

Because PTAB and Director decisions and memoranda are issued without rulemaking procedure, they are just subregulatory guidance, without binding force of law. ("Guidance" is a catch-all that includes "interpretative" rules or "general statements of policy" under 5 U.S.C. § 553(b)(A).) Unlike Article III decisions, agency decisions bind only the parties, with no prospective binding effect on anyone else. *Bowen v. Georgetown University Hosp.*, 488 U.S. 204, 218 (1988) (Scalia, J.,

---

[1] Both the Administrative Conference of the United States and Executive Office of the President have noted the importance of policy statements, and remind agencies of compliance. ACUS Recommendation 2017-5, *Agency Guidance Through Policy Statements*, https://www.acus.gov/recommendation/agency-guidance-through-policy-statements, 82 Fed. Reg. 61,734 (Dec. 29, 2017); Executive Office of the President, *Final Bulletin for Agency Good Guidance Practices*, OMB BULLETIN 07-02 (Jan. 18, 2007), *reprinted* 72 Fed. Reg. 3432-40 (Jan. 25, 2007).

concurring) ("the entire Act is based upon a dichotomy between rule making and adjudication."); *Alabama Power Co. v. F.E.R.C.*, 160 F.3d 7, 11 n.5 (D.C. Cir. 1998) ("The APA does not contemplate the use of adjudication to develop rules."). PTO pronouncements issued without statutorily-required procedure have no binding effect against the public. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301-03 (1979) (to have binding force of law, a rule must be within Congressionally-delegated authority and "conform with any procedural requirements imposed by Congress); *Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1320 (Fed. Cir. 2017) (plurality opinion) ("the Director may only set forth such 'standards and procedures' through … rulemaking … with all of the requirements and obligations that accompany the exercise of that authority."); 872 F.3d at 1339 (Reyna, J. concurring, "The Patent Office cannot effect an end-run around its congressionally delegated authority" by sidestepping the procedures of "regulation.").

Any decision that cites guidance to decide against a position contested by a party must explain itself from first principles as if the guidance never existed. *Nat'l Mining*, 758 F.3d at 253; *State Farm*, 463 U.S. at 42-43, 48 (agency must explain "relevant factors").

## B.  History of the PTO's institution guidance

The AIA gave the Director "complete discretion to decide not to institute review." *Saint Regis Mohawk Tribe v. Mylan Pharm. Inc.*, 896 F.3d 1322, 1327 (Fed. Cir. 2018). The only checks on the Director's discretion to *deny* institution are the Constitution and default applicability of the APA. *See Dickinson v. Zurko*, 527 U.S. 150, 170-71 (1999) (under 5 U.S.C. § 559, § 706(2) applies unless carved out "expressly"). That very breadth of discretion all but requires the Director to issue prospective guidance to explain future, tentative thought processes.

In 2018 and 2020, the Director did exactly that. *NHK Spring Co. v. Intri-Plex Techs., Inc.*, IPR2018-00752, Paper 9 at 11-20 (PTAB Sept. 12, 2018) and *Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, Paper 11 (PTAB Mar. 20, 2020) collected factors that would guide the Director's discretion. Both *NHK* and *Fintiv* characterize themselves as "non-dispositive" factors to be "balanced," to guide "discretion."

The Stewart memo *as written* calls for briefing on additional factors, including "Settled expectations of the parties, such as the length of time the claims have been in force" (Appx62). The Stewart

memo, *as written*, only adds additional factors into the *Fintiv* mix, but does not purport to bind any nondiscretionary outcome.

Neither the Stewart memo nor *Dabico* explains how "settled expectations" finds grounding in the "considerations" of § 316(b) or any other statutory authority (Appx61-67). Neither the Stewart memo nor *Dabico* sets forth any evaluation method to determine which "expectations" are "settled" vs. mere subjective hope. Neither the Stewart memo nor *Dabico* considers "expectations" of competitors. Neither explains how unilateral deference to only the patent owner's "expectations" relates to any of the § 316(b) considerations. Neither explains how unilateralism is consistent with bilaterally-balanced "integrity of the patent system." § 316(b) (Appx61-67). And neither the Stewart memo nor *Dabico* was published in the Federal Register, *contra* 5 U.S.C. § 552(a)(1)(D).

## C. Sandisk's IPR proceedings

Sandisk's three IPRs were denied because of "settled expectations," citing *Dabico* as if it had force of law (Appx2). The then-Acting Director's decision gives just one terse reason: "the challenged

patents have been in force for approximately nine, twelve, and twelve years, creating strong settled expectations." (Appx2).

- The then-Acting Director does not explain any connection between mere age and "settled expectations." The then-Acting Director concedes that no information in the record justifies any such finding. (Appx2).

- The only "authority" cited (Appx2) is the then-Acting Director herself, not any statute or regulation. But *Dabico* was not promulgated with rulemaking procedure (not even publication in the Federal Register, *contra* 5 U.S.C. § 552(a)(1)(D)). The then-Acting Director identifies no basis for attaching controlling legal weight to *Dabico*. (Appx2).

- The then-Acting Director's decision does not discuss any of the other *Fintiv* factors that Sandisk raised in its brief (*contrast* Appx2 *against* Appx211-26, Appx241-43), or explain why the patent owner's unilateral "expectations" outweigh all other factors.

## II. The "settled expectations" rule is a "general statement of policy," not a "legislative" rule

Many issues in this case turn on how the Stewart memo is classified under the APA. As *written*, the Stewart memo only purports to call for briefing, adding factors to the *NHK*/*Fintiv* list. *As written*, it frames non-dispositive factors for discretionary weighing, without setting any outcome-determinative standard. Because *as written* it "affect[s no] individual right[ ] [or] obligation[ ]," it is therefore classified as a "general statement of policy," not a legislative rule.

Sandisk erroneously argues that the Stewart memo is "substantive" (ECF 2-1 at 21-24).

From the 1950s until about 2010, the word "substantive" was used in two contradictory senses, as either the opposite of "procedural" or as the opposite of "interpretative" and "policy statement." Using the same word to mean two different things contributed to confusion. *Community Nutrition*, 818 F.2d at 946 (the taxonomy is "enshrouded in considerable smog").

Over the last fifteen years, D.C. Circuit decisions have adopted a cleaner nomenclature, in which "substantive" is only used to contrast to "procedural," and "legislative" is used to contrast to "interpretative" and

"policy statement." *E.g.*, *Nat'l Mining*, 758 F.3d at 251-52 (the APA divides rules "into three boxes: legislative rules, interpretive rules, and general statements of policy."); *see also* KRISTIN HICKMAN & RICHARD PIERCE, ADMINISTRATIVE LAW TREATISE (7th ed. 2023) (Chapter 4 uses the nomenclature suggested here).[2]

Sandisk's facial challenge is wide of the mark both as a mandamus petition (see § III.B), and as a facial challenge to a legislative (or substantive) rule (explained four paragraphs above). *Nat'l Mining*, 758 F.3d at 253. However, *as-applied*, Sandisk's *decisions* (Appx1-3) are reviewable as discussed in §§ III.A and IV.

---

[2] The APA also divides "substantive" from "procedural." "Procedural" rules govern intra-agency conduct for benefit of agency efficiency. The residual class, "substantive" rules (in the sense opposed to "procedural"), governs conduct outside the agency, scope of agency authority or jurisdiction, statute of limitations, burdens of proof, and initial access to a tribunal. Very likely, a rule governing institution is "substantive" rather than "procedural." But that's not relevant to this case.

An expanded version of this taxonomic explanation is in David Boundy, *The PTAB is Not an Article III Court, Part 3: Precedential and Informative Opinions*, 47 AIPLA Q.J. 1 (Jun. 2019) (a "director's cut" updated to reflect subsequent cases is at http://ssrn.com/abstract=3258694)Boundy Part 3.

## III. Mandamus is unavailable; the Court should treat the petition as a notice of appeal

### A. The "shenanigans" in this case are appealable

Justice Breyer's majority opinion in *Cuozzo*, 579 U.S. at 275, gives examples of "shenanigans" that "may be properly reviewable in the context of § 319" appeal—due process, agency action outside statutory limits, "contrary to constitutional right," "in excess of statutory jurisdiction," or "arbitrary [and] capricious." *Cuozzo* identifies 5 U.S.C. §§ 706(2)(A)-(D) as the scope of issues that may be raised in a § 319 appeal.

While § 314(d) bars review of the ultimate determination whether to institute, it does not bar challenges to the methods by which the agency made that determination. The presumption of judicial review, 5 U.S.C. § 702, is explained in *Bowen*, 476 U.S. 670 and *Lindahl v. Office of Personnel Management*, 470 U.S. 768, 791 (1985). In both cases, an agency adopted a rule that would govern future agency decision-making. In both, a preclusion statute provided that no "decision" or "determination" would be subject to review. However, in both, the Supreme Court confined the preclusion statute narrowly to its terms, thereby allowing review of rules *underlying* determinations. *Bowen* held

— 13 —

that while "determinations" and benefit amounts for individual claimants were precluded, the "*method* by which [determinations are made] rather than the *determinations* themselves" were reviewable." *Bowen*, 476 U.S. at 675. "[C]hallenges to the validity of the Secretary's instructions and regulations are cognizable..." *Id.* at 680. Likewise, *Lindahl* held that while *decisions* were precluded, *rules* for denying benefits would be reviewable: "review is available to determine whether there has been a substantial departure from important procedural rights, a misconstruction of the governing legislation, or some like error going to the heart of the administrative determination." *Id.* at 791 (cleaned up).

Like *Bowen*, § 314(d) only precludes appeal of the "determination," but says nothing to preclude review of the "*method* by which [the PTO determines institution]." *Bowen*, 476 U.S. at 675; *Lindahl*, 470 U.S. at 791.

Even broad discretion has limits. Imagine that the PTO announces a scheme under which petitions would be discretionarily denied by criteria that directly contradict the statutory considerations of § 316(b). *Bowen* says this underlying "method" is reviewable. 476 U.S. at 675. *Cuozzo* specifies that defects in underlying method that are also

— 14 —

within § 706(2)(A)-(D) are reviewable. 579 U.S. at 275. If the rule were written in binding "legislative" terms, it would be reviewable on promulgation. If written as a soft-edged "general statement of policy," it would be reviewable as-applied. *Nat'l Mining*, 758 F.3d at 253.

An appeal framed around *Bowen* underlying methods would not be precluded.

### B. Sandisk's issues lack mandamus jurisdiction

Sandisk's petition fails many limits on mandamus:

(a) Mandamus lies only to compel ministerial, as opposed to discretionary, duties. *Leopold v. Manger*, 102 F.4th 491, 497-98 (D.C. Cir. 2024). Sandisk requests a *limit* on the Director's discretion (ECF 2 at 2, 38-39). But limited discretion is still discretion, not amenable to mandamus.

(b) Sandisk's petition identifies no "nondiscretionary duty" or "clear and indisputable right." Sandisk shows a clear and indisputable *error* (ECF 2-1 at 12), but that's not the same thing. Institution is never a "clear and indisputable right." *Mohawk Tribe*, 896 F.3d at 1327.

(c) Sandisk raises due process issues, but due process can only be violated when the claimant has a property interest. "Property" requires a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). An IPR petitioner has no such entitlement. *Mohawk Tribe*, 896 F.3d at 1327.

(d) Sandisk attacks the power of the Director to act without notice-and-comment. Agencies are permitted to issue "general statements of policy" without notice-and-comment. § 553(b)(A). Sandisk has no "indisputable right" to limit that power, or to demand its preference for old guidance over new.

(e) Sandisk asks reconsideration "solely under the statutory criteria." (ECF 2 at 38). But there *are* no statutory criteria for discretionary denial. A vacuous request cannot be ordered by mandamus.

For these reasons, institution unlawfully *denied* will *never* be reviewable by mandamus. *Cuozzo*'s "shenanigans" define the path and scope of review—by *appeal*, on any basis within § 706(2)(A)-(D). *See also*

5 U.S.C. § 706(1) (a court "shall" remedy "agency action unlawfully withheld").

### C. This Court's *Apple v. Vidal* and *In re Palo Alto Networks* do not bar this appeal

Two of this Court's decisions, *Apple, Inc. v. Vidal*, 63 F.4th 1 (Fed. Cir. 2023) and *In re Palo Alto Networks*, 44 F.4th 1369 (Fed. Cir. 2022) suggest broad preclusions of reviewability that directly conflict with Supreme Court precedent. This Court must follow the Supreme Court, by either disregarding conflicting Federal Circuit decisions or reading them narrowly.

*Apple* suggests that § 314(d) precludes review of guidance governing institution. 63 F.4th at 13-14. This directly conflicts with *Bowen*, 476 U.S. at 675, 680 ("[C]hallenges mounted against the *method* by which [determinations are made] rather than the *determinations* themselves" are reviewable), and the *Bowen*/*Lindahl* directive that preclusion statutes are to be read narrowly, according to their terms and no more. 476 U.S. at 680-81; *Lindahl*, 470 U.S. at 779-80.

In *Apple*, both parties briefed maximalist all-or-nothing positions; neither raised the nuanced line-drawing of *Bowen* or *Cuozzo*, or the D.C. Circuit middle ground for reviewability of guidance that

PTAAARMIGAN urges here. *Apple* may be read under the general rule that nonbinding, factor-balancing "general statements of policy" (the *Fintiv* factors) are not final agency action and therefore not reviewable by facial challenge. *Nat'l Mining*, 758 F.3d at 253.

*Apple* likewise suggests that review is confined to constitutional issues. 63 F.4th at 7 n.1. This directly conflicts with *Cuozzo*, which lists constitutional grounds as one item among the list of § 706(2)(A)-(D) shenanigans. As noted in § III.B, items (b) and (c), institution will essentially *never* present a constitutional issue, so the *Apple dictum* cannot be correct.

*Palo Alto* states a categorical preclusion, the position rejected in *Cuozzo* in the paragraph beginning "Nevertheless." 579 U.S. at 274-75. *Palo Alto*'s off-hand *dictum* is best read as rejecting mandamus to revisit discretionary decisions. *Leopold*, 102 F.4th at 497-98.

Narrow reading harmonizes *Apple* and *Palo Alto* with *Bowen* and *Cuozzo*, and avoids a circuit split with the D.C. Circuit, *Nat'l Mining*, 758 F.3d at 253, preserving the presumption of review without unsettling § 314(d).

## IV. As applied, Sandisk's decisions are arbitrary, capricious, and in excess of statutory authority, in a *Bowen*/shenanigans appeal

In an appeal framed around *Bowen*/shenanigans, the then-Acting Director's decisions cannot stand. The PTO did *not* misstep by publishing guidance without notice-and-comment or replacing old non-binding guidance with new non-binding guidance. Instead, *Bowen* provides *appeal* jurisdiction to review unlawful *methods* of making determinations. *Cuozzo* instructs review of the then-Acting Director's "shenanigans" of failing to connect guidance to statutory authority, misapplying guidance as if it were binding, and failing to give *State Farm* explanations on multiple issues.

An agency rule must be set aside when it is "in excess of statutory jurisdiction [or] authority." § 706(2)(C). An agency rule is "arbitrary and capricious if the agency has relied on factors [that] Congress has not intended it to consider, [or] entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43.

This brief notes a number of failures of the then-Acting Director to explain. *See* §§ I.B and I.C. Each failure to explain a relevant factor—or relying on an irrelevant one—is "arbitrary and capricious." *State Farm*,

463 U.S. at 43. *Cuozzo*'s "shenanigans" set the scope of review. 579 U.S. at 275.

Sandisk explains how the "settled expectations" rule exceeds the Director's authority and the "considerations" of § 316(b) (ECF 2-1 at 26-28). The PTO's brief will no doubt attempt to rehabilitate the rule with *post hoc* rationalizations. But *post hoc* rationalization cannot cure the absence of contemporaneous explanation. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The then-Acting Director was obligated to non-arbitrarily and non-capriciously explain, *at the time*, some rational connection reconciling the permissible § 316(b) "considerations" with unilateral favoritism for the patent owner's supposed "expectations." *Contrast* Appx62-63 *against Metro. Area EMS Authority v. Sec'y of Veterans Affairs*, 122 F.4th 1339, 1344 (Fed. Cir. 2024) (agency has "affirmative burden of promulgating and explaining a non-arbitrary, non-capricious rule"). The Director's failure to cogently explain all "relevant factors," "important aspects of the problem," and changes of position *at the time* is arbitrary and capricious, reviewable in a *Bowen*/shenanigans appeal, and cannot be cured by briefing now. *Contrast* Appx62-63 *against State Farm*, 463 U.S. at 42-43; *FCC v. Fox*

*Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (agency must explain changes of position); *Metro. Area EMS*, 122 F.4th at 1344.

Sandisk facially challenges several procedural underpinnings (ECF 2-1 at 22-25). Some of Sandisk's points are valid, some are overreaching. The PTO is free to issue non-binding "general statements of policy" with only minimal procedure, especially in an area where statute is silent, the issue is committed to agency discretion, and agency employees treat the general statement of policy as only that. On the other hand, attaching binding effect to guidance issued without publication in the Federal Register, 5 U.S.C. § 552(a)(1)(D), without a *State Farm* and *Fox Television* explanation, and without procedure required by the Paperwork Reduction Act, 44 U.S.C. § 3501 *et. seq.*, especially § 3507 and 5 C.F.R. § 1320.10, is reviewable as *Bowen*/shenanigans.

In absence of *regulation* governing discretionary denial, after a petitioner makes out a threshold showing under § 314(a) and (b), to thereafter decline institution, the Director must explain starting from first principles, weighing all factors and petitioner's arguments, as if the guidance never existed. *National Mining*, 758 F.3d at 253; *Arc Bridges*, 861 F.3d at 197-200. The then-Acting Director's failure to

explain is reviewable as a *Bowen* underlying method. On that procedural framing, Sandisk's decisions are reviewable for *as-applied* shenanigans in the "settled expectations" rule. In that posture, the rule should be set aside under § 706(2)(A)-(D). The matter should be remanded with instructions to the Director to make a choice: either regulation or "general statement of policy." Once the choice is made, the Director should revisit institution within that choice and all the law that comes with it.

## V.  The Stewart memo is part of a pattern of bypassing required rulemaking procedure

The PTO's neglect of rulemaking procedure and misuse of guidance imposes costs on the public of over ***$1 billion per year***.[3] PTAAARMIGAN's brief in *Apple, Inc. v. Squires*, 24-1864, ECF 57, at 31-36 and the article of footnote 3 list a number of other examples in which the PTO bypassed rulemaking procedure. Sandisk's complaint of misuse of guidance is the tip of an immense iceberg.

---

[3] See David Boundy, *Agency Bad Guidance Practices at the Patent and Trademark Office: a Billion Dollar Problem*, 2018 PATENTLY-O L.J. 20 (2018), *available at* https://ssrn.com/abstract=3258040.

## VI.  Conclusion

The Court should treat Sandisk's mandamus petition as a notice of appeal, and order briefing on that basis.

Date: October 15, 2025            By: /s/ David E. Boundy

DAVID E. BOUNDY
PIERSON FERDINAND LLC
P.O. BOX 590638
NEWTON, MA  02459
(646) 472 9737

David.Boundy@PierFerd.com

For *Amicus Curiae*
  PTAAARMIGAN LLC

**CERTIFICATE OF COMPLIANCE**

**WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1.    This brief complies with the type-volume limit of Federal Circuit Rule 29(b) because it contains 3886 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), less than the 3900 words authorized.

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Circuit Rule 28.1 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared using Microsoft Word 2003, in Century Schoolbook 14 pt, a proportionally spaced typeface.

Date: October 15, 2025          By:   /s/ David E. Boundy

                                          DAVID E. BOUNDY